JOHN L. MORRELL

*v.*

UNION DRAINAGE DISTRICT No. 1.

*Filed at Springfield October 6, 1886.*

1. DRAINAGE LAW — *drainage district — legality of its organization assumed.* On bill to enjoin the collection of special assessments made by drainage commissioners, on the ground of misconduct, etc., where no charge is made or proved affecting the jurisdiction to organize the district, it will be assumed, in a collateral proceeding, that the district was legally organized.

2. SAME—*apportioning assessment for benefits according to the entire cost—the statute construed.* The words, "but in no event shall any tract of land be assessed for *benefits* in a greater amount than its proportionate share of the estimated cost," etc., in section 14 of the Drainage act of May 29, 1879, mean, that each tract of land shall pay a tax in the proportion the benefits it would receive will bear to the entire cost of the drainage. Such assessment does not necessarily find the full benefits the land will sustain.

3. SAME—*of an additional assessment, in case of a deficit.* Where the original assessment, under section 14 of the Drainage law of 1879, proves inadequate to complete the work undertaken, the commissioners are, by sec-

tion 32 of the same act, authorized to levy an additional assessment to enable them to pay the deficit. In doing so, each tract of land must be assessed such proportion of the additional cost as its original assessment bore to the total original assessment. No additional assessment of benefits is necessary.

4. SAME—*remedy in case of improper assessment.* The statute relating to drainage, gives any party who feels himself aggrieved by the assessment against his land, an appeal, by which any errors may be corrected; and where the commissioners, in making an assessment, have jurisdiction, and the party affected thereby fails to avail of his legal remedy, by objecting to its confirmation or appealing, a court of equity will not interpose to vacate the judgment of confirmation, or grant other relief against the assessment.

WRIT OF ERROR to the Circuit Court of Christian county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

Mr. A. McCASKILL, and Mr. J. C. McBRIDE, for the plaintiff in error:

Land can not be specially assessed for drainage in a greater amount than it will be benefited. Rev. Stat. chap. 42, sec. 112, Starr & Curtis' ed.; *Huston* v. *Clark,* 112 Ill. 344; *Crow* v. *Tolono,* 96 id. 255; *Crawford* v. *People,* 82 id. 557.

It is essential that the extent of the benefits shall appear equal to the assessments. *Crawford* v. *People, supra; Crow* v. *Tolono, supra; Chicago* v. *Larned,* 34 Ill. 203; *Lee* v. *Ruggles,* 62 id. 427.

A court of chancery will take jurisdiction, and restrain the collection of taxes levied or assessed without authority of law. *Bank* v. *Cook,* 77 Ill. 622; *Drake* v. *Phillips,* 40 id. 388; *Vieley* v. *Thompson,* 44 id. 9.

Mr. H. M. VANDEVEER, and Mr. JAMES M. TAYLOR, for the defendant in error.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the Court:

· The bill in this case is for an injunction and relief, and was brought by John L. Morrell, against the drainage commissioners of Union Drainage District No. 1, of the towns of Harvel

and King, in Montgomery and Christian counties, and also against the treasurer of such drainage district, and against the treasurer and *ex officio* collector of Christian county.    It appears that, upon a petition presented for that purpose, signed by the required number of land holders owning lands in the proposed district, a drainage district, comprised of lands lying in Harvel and King towns, was organized by the commissioners of highways of the respective towns, under the act of May 29, 1879, in relation to the construction, maintenance and repair of drains and ditches by special assessment.    Misconduct is alleged against the drainage commissioners, touching their official action in making assessments for benefits, and otherwise, but nothing is charged or proved that affects the jurisdiction of the commissioners to organize the district for drainage purposes, as was done.    It will therefore be assumed, in a collateral proceeding, as this is, the drainage district was legally organized under the provisions of the statute.

It seems that under the provisions of the 14th section of that act, the drainage commissioners assessed the benefits that would accrue to complainant's land by the construction of the proposed drain, at the sum of $1800.    Of this sum the commissioners, at the time of confirmation, directed that ten per cent should become due immediately, and that the remainder should be paid in equal installments, to become due at dates definitely fixed.    The first assessment made against complainant's lands was for fifty per cent of the amount of benefits assessed, which was equivalent to $900. This sum was to be and was credited by small sums allowed for damages for land taken, and for an old drain or ditch utilized, and the balance of this first assessment was fully paid, and as to it no controversy now exists.    A second assessment of fifty per cent on the amount of benefits, that is, the further sum of $900, was made.    No appeal was ever taken by complainant from the order confirming this last

assessment of $900, and, as it was never paid, judgment was subsequently rendered upon it in the county court, on the application of the county collector. That judgment is still unsatisfied, and one branch of the relief asked is, that this judgment may be set aside and its collection enjoined. Later on, the commissioners made another assessment against the lands of complainant, of twenty-four per cent on the sum assessed to complainant for benefits, which amounted to the sum of $432. This last assessment, it is alleged, was made without authority of law, and is for that reason void. The other relief demanded by the bill is as to this particular assessment. All charges of misconduct against the drainage commissioners were specifically denied in the answer made by them, to which there was a replication. The motion to dissolve the injunction previously awarded, was sustained, and the bill dismissed. It is recited in the bill of exceptions, the motion to dissolve the injunction "was determined on the bill, answer and replication in this cause, and said affidavits, and that no other or further affidavits were read or evidence offered on the hearing of said motion." Complainant brings the case to this court on appeal.

It is so evident that no relief can be granted to complainant as to the judgment rendered in the county court for the second assessment of $900, that branch of the case need not be elaborated. The commissioners clearly had jurisdiction to make that assessment, and if any irregularities intervened that rendered it invalid, such defence could have been interposed when the commissioners came to make the order of confirmation, or on the application, in the county court, for judgment. The statute having given a remedy at law, chancery will not interpose to vacate the judgment, or grant other relief as to such assessment.

The principal question in the case arises on the following allegation contained in the amended bill: that the assessment of benefits made by said drainage commissioners on

June 29, 1883, in the sum of $1800, was the only assessment of benefits to said tract of land ever made or attempted to be made by such commissioners, and said $1800 was, in fact, the full amount of all benefits that did, could or have, in any manner, accrued, or can accrue, to complainant's said tract of land by reason of said ditch or drainage system, when fully completed.

The argument proceeds on the theory, that inasmuch as the first and second assessments, of $900 each, equal the whole amount of the assessment for benefits, viz., $1800, there could be no further special assessment or tax levied upon the complainant's land, and hence it is said the special tax of $432, attempted to be levied on January 22, 1884, was without authority of law, and void. The limitation that is said to exist on the power of the commissioners to make the third or last assessment, is thought to be contained in the 14th section of the Drainage act, cited *supra*. That section provides that "at the earliest practicable day after the organization of the district, the commissioners shall proceed to view the line or lines of the proposed work, and determine the cost of the same, and shall view the lands to be benefited thereby, and ascertain, to the best of their judgment, the amount of the benefit that will accrue to each tract of land to be affected thereby, and shall assess to each tract of land its proportionate share of the entire cost of such work; but in no event shall any tract of land be assessed for benefits in a greater amount than its proportionate share of the estimated cost of the work and all expenses of proceedings, nor in a greater amount than it will be benefited by the proposed work, according to the best judgment of the commissioners." It may not be very clear what is meant by the expression, "its proportionate share of the entire cost of the work." No doubt, it is proper this section should be read in connection with other sections of the same act, to ascertain its meaning. It will be seen, it is made the duty of the commissioners to

examine the map and report of the engineer, and if, from
their own examination, and such map and report, if there be
any, it shall appear the lands included in the proposed dis-
trict will be benefited for agricultural, sanitary or mining
purposes by the construction of a drain or combined system
of drainage, they shall so find, "unless they shall find, from
the evidence of witnesses then introduced, that the cost of
the proposed work will exceed the benefits to be derived
therefrom." In this case, the engineer selected by the com-
missioners to make an examination of the work to be done,
and estimate the cost, reported, that while the expenses of
construction may possibly exceed the estimates made by
him, it was believed the benefits that would accrue to the
lands comprised in the proposed district would far exceed
the cost of construction. The commissioners, from their own
examination, and from the examination of the map and re-
port made by the engineer, found the lands included in the
proposed district would be benefited for agricultural purposes
by the construction of the drain or ditch, and they further
found that the benefits that would accrue to the lands in such
district by the proposed drainage, will largely exceed the cost
of constructing the proposed drain in such district. There-
upon the commissioners ordered that such drainage district
be organized, and it was accordingly so done. Having organ-
ized the district, it became the duty of the commissioners,
at the earliest practicable day, to view the route proposed
for the drain or ditch, and determine the cost of the same,
and then ascertain, to the best of their judgment, the amount
of the benefits which will accrue to each tract of land affected,
and to assess to each tract "its proportionate share of the
entire cost of the work." Then comes the limitation clause
of section 14, "but in no event shall any tract of land be
assessed for *benefits* in a greater amount than its proportion-
ate share of the estimated cost of the work,    *    *    *
nor in a greater amount than it will be benefited by the pro-

posed work, according to the best judgment of the commissioners." Evidently it was meant that each tract of land should pay a tax in the proportion the benefits it would receive would bear to the entire cost of constructing the proposed drainage. That would be its "proportionate share" of the entire estimated cost of the work. That was done in this case. The commissioners determined the "proportionate share" of the entire cost of the proposed work that should be assessed on complainant's land to be $1800, and accordingly they assessed it for benefits in that sum, which sum, it must be assumed, they also determined was not in excess of the benefits it would sustain. The statute is imperative, the commissioners could not assess complainant's land for benefits in excess of its "proportionate share" of the entire cost of the proposed work, whatever that might be. The finding of the commissioners that complainant's land would be benefited in a sum equal to its "proportionate share" of the estimated cost of the proposed work, is not a finding such land will not be benefited in any greater sum by the construction of such drainage. The commissioners found no such fact. All they did find, was, that the "proportionate share" of the estimated cost of the proposed work did not exceed the benefits the land would sustain, in the best judgment of the commissioners, and nothing more. It may be the benefits the land would sustain would far exceed the sum of $1800, the "proportionate share," as first estimated, the land should bear of the estimated cost of the proposed work; but by the statute the commissioners are prohibited from assessing benefits in excess of "its proportionate share" of the estimated cost of the work.

It is believed this is the proper construction of these provisions of section 14, and if so, they can have no effect upon the 32d section of the same act, which gives authority for additional assessments in case the "proportionate share" each

tract should bear of the estimated cost of the entire work, as
first determined, should prove to be inadequate to complete
the work to be done.   It was no doubt expected the primary
estimates of the cost of such undertaking. might often prove
inaccurate.   In this case the engineer reported the cost of
the work might exceed the estimates, but the benefits would
be far in excess of the cost.   By the 32d section, provision
is made for the happening of such a contingency, where it is
declared, "when the assessments hereinbefore made shall be
inadequate to complete the work proposed,   *   *   *   each
tract of land shall be assessed such proportion of the addi-
tional cost as its original assessment bore to the total original
assessment, and the said additional assessment shall be made
by the commissioners in the same manner as the original
assessment was made."   The original assessment was found
to be inadequate to complete the work undertaken, and the
commissioners levied an additional assessment to enable them
to pay the deficit.   In doing so they conformed to this section
of the statute, and assessed no more against complainant's
land for the additional cost than the proportion its original
assessment bore to the total original assessment.   This addi-
tional assessment was made precisely as the original assess-
ments had been, and was confirmed in the same way.   In
case a party whose land has been assessed, and that assess-
ment confirmed by the commissioners, is dissatisfied, the stat-
ute gives him an appeal, where any error that has intervened
that would work a hardship to the owner, may be corrected.
It is not denied complainant could have had an appeal from
the first and second assessments made upon his land, had he
so desired.   There is no reason why he could not have ap-
pealed from the confirmation of the third or last assessment
as well as the other assessments.   It can hardly be doubted,
the commissioners had jurisdiction, under the statute, to
make additional assessments when the original assessments
proved to be inadequate to complete the work proposed, and

any error that might intervene in their action could only be corrected on the appeal provided by statute.

It is said great hardship will come upon complainant if the second and third assessments shall be collected. That may be; but such hardships result, if at all, from the imperfect application of the law through the commissioners, and such results can not be controlled by a court of equity. An appeal is given by statute for the correction of all errors that may be committed by the commissioners, in making assessments or otherwise. No reason is shown why complainant could not take an appeal, under the statute, from either assessment against his lands, which is now alleged to be burdensome and oppressive, as is held might be done in *Drainage Commissioners* v. *Hudson,* 109 Ill. 659.

The Drainage act construed in *Huston* v. *Clark,* 112 Ill. 350, is not the one under which the district in this case was organized, and what was said in the opinion in that case can have no application in the case being considered. It was the act of May 29, 1879, known as the "Levee act," for the formation of a drainage district. (Sess. Laws, 1879, p. 120.) Nor is there anything in the opinion in *Drainage Commissioners* v. *Hudson, supra,* inconsistent with the views here expressed. On the contrary, that case is in entire harmony with the conclusions reached in this case.

No ground is perceived for equitable relief, and the decree of the circuit court must be affirmed.

*Decree affirmed.*