DRAINAGE COMMISSIONERS OF DRAINAGE DISTRICT No. 2 *et al.* Appellants, *vs.* A. T. KINNEY *et al.* Appellees.

*Opinion filed February 20, 1908.*

1. DRAINAGE—*general provisions of Farm Drainage act apply to various kinds of districts.* The various provisions of the Farm Drainage act are applicable to all of the various kinds of districts which may be organized under such act, and among such provisions are those which relate to second or additional assessments.

2. SAME—*a district cannot incur debt in advance of assessment.* If, after a drainage district is organized under the Farm Drainage act and an assessment is levied, it appears from the bids that the work will cost more than the amount of the assessment, a new assessment must be made before proceeding with the work; and the commissioners have no power to let the contract and proceed with the work and then make an additional assessment to meet the deficit, even though there is no fraud and the property is benefited to the full amount of both assessments.

3. TAXES—*tax levied without authority of law may be enjoined.* A drainage assessment levied by a district organized under the Farm Drainage act to pay an indebtedness incurred before the assessment was made is levied without authority of law and its collection may be enjoined in equity.

APPEAL from the Circuit Court of Christian county; the Hon. A. M. ROSE, Judge, presiding.

This is an appeal from a decree of the circuit court of Christian county perpetually enjoining the collection of a special assessment levied by appellants. Appellees are nineteen owners of lands in the district.

The case presented upon the pleadings and evidence in the court below was substantially as follows: Drainage dis-

trict No. 2 was duly organized on December 19, 1903, and thereafter an engineer was employed to make a survey and estimate for a system of drainage. His estimate as to the part to be paid by the drainage district was $2260. Besides this was included $1420, which it appears the city of Taylorville had agreed to contribute towards the construction of part of the sewer in order that it might use the same. Thereupon the commissioners fixed a graduated scale for each tract of land, and on February 6, 1904, levied an assessment of $2533.88. The appellees paid their respective portions of this assessment. The drainage commissioners proceeded to advertise for bids, and found that by reason of the advance in the price of tile and labor and other causes the lowest bid exceeded the estimate by about one-third. Contracts were let and the work was performed, costing considerably more than the first assessment. Appellants contend that all of the work except the making of a certain tile well, where the city drains connected with the drains of the district, was work which was included in the original contract and contemplated to be done when the making of the system was first entered upon. In order to meet the increased expenditure the commissioners made another levy for $2472, which is the one to which appellees object. This levy was made November 25, 1904. The work had been completed and accepted November 18, 1904.

JAMES M. TAYLOR, LESLIE J. TAYLOR, and HOGAN & WALLACE, for appellants.

J. C. & W. B. McBRIDE, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

Appellees concede that there is no charge of fraud, nor is it shown that there have been any improper or improvident expenditures by appellants. Appellees offered to show on the hearing that the benefits to the lands in the district re-

sulting from the drainage system would not be equal to the entire cost involved, including this assessment. The court would not permit evidence to be introduced to support this offer. Appellees' chief contention is, even conceding good faith and fidelity of the drainage commissioners and conceding that the land owners in the district, including appellees, have severally received a fair equivalent in the enhanced value of their lands for every dollar of this assessment, still they insist this levy of the second assessment was not authorized by law, because the record shows that the work was performed and the indebtedness incurred prior to the said levy. They insist that a fair construction of the Farm Drainage act in all its various provisions, (Hurd's Stat. 1905, p. 799,) and especially sections 41 (p. 810) and 63 and 64 (p. 820) of that act, is clearly to the effect that it was not the intention of the legislature to permit indebtedness to be incurred in advance and allow a levy to be then made for the purpose of meeting such indebtedness. They cite in support of this contention *Winkelmann* v. *Drainage District,* 170 Ill. 37, and *Ahrens* v. *Drainage District,* 170 id. 262. Counsel for appellants answer that these decisions were rendered, not in construing the present act, but the Levee Drainage act. (Hurd's Stat. 1905, p. 775.) This is admitted to be true, but it is still insisted that the reasoning in those cases is also applicable to the Farm Drainage act.

While it has been repeatedly held by this court that these two acts are independent codes of law, and that a drainage district organized under one act is subject only to the provisions of that act and that the provisions of the other act have no application, (*Chicago, Burlington and Quincy Railway Co.* v. *People,* 212 Ill. 103, and cases cited,) yet if sections 63 and 64 of the Farm Drainage act apply to the levy of this additional assessment for the district here in question, then the reasoning in the *Winkelmann* and *Ahrens cases, supra,* is substantially conclusive on the question now under consideration, for these last sections provide, as did

certain sections under discussion in those cases, that the commissioners may borrow money, in anticipation of that to be raised by the collection of assessments, not exceeding ninety per cent of any assessment or levy unpaid at the time of borrowing the same, as provided under the other act, and said sections in this act, taken in connection with the entire act, as clearly indicate as do the provisions in the Levee act that the commissioners have no power to contract debts over and above the amount of the assessment. As stated in *Chicago, Burlington and Quincy Railway Co.* v. *People, supra,* (p. 109,) the Farm Drainage act provides for various kinds of districts, and there is a suggestion in the briefs that sections 63 and 64 refer only to special drainage districts. Taking the entire act together, we think it is obvious that the legislature did not intend that when special assessments, or a second or additional special assessment, should be levied, one class of districts should have power to levy in one way and another class in some other manner. Certainly this would not be the construction that would be placed upon this statute unless the various provisions plainly and clearly required .it. The various provisions, considered together, clearly indicate, not only as to the first assessment but as to the additional levies, that they shall be carried on in practically the same manner. Provisions of a general nature in this act must be held to apply to all the various districts formed thereunder, under that portion of section 78 of the act which reads: "The general provisions applicable to all districts shall apply to all districts provided for in this act." Hurd's Stat. 1905, p. 826; *Chicago, Burlington and Quincy Railway Co.* v. *People, supra.*

Counsel for the appellants rely upon *Morrell* v. *Union Drainage District,* 118 Ill. 139. This decision was rendered under the Drainage act passed in 1879. The provision in that act as to the second or additional levy was entirely different from the provisions in the present act. They also cite and rely upon the reasoning of the court in *City of Chi-*

*cago* v. *Noonan,* 210 Ill. 18, where; under the Local Improvement act, this court decided that before the second or supplemental assessment could be levied under the provisions of that act the work must be entirely completed, so that the actual deficiency could be correctly ascertained. The provisions of the Local Improvement act with reference to additional and supplemental assessments are entirely different from either the Farm Drainage or Levee act. The two drainage acts, in this particular, are much more alike one another than either of them is like the Local Improvement act. The argument is also made that the Farm Drainage act differs from the Levee act in that under the latter the commissioners, under the direction of the court, initiate matters of improvement on their own motion, whereas in this case the land owners themselves set the comissioners in motion and asked to have the work done on agreed plans. From the standpoint of public policy, comparing the methods of raising assessments under the two acts, we would be inclined to hold that there was more reason for construing the Farm Drainage act so as to require an assessment to be levied before an indebtedness is incurred than there was to construe the Levee act in that manner. We appreciate the hardship that may arise to certain persons on account of this holding, but we must look to the statute to find the powers of the commissioners to levy this additional assessment. To sustain an assessment levied without any authority in law would open the door to greater evils in other cases than can possibly arise here from an enforcement of the law.

The further contention is made that appellees have a complete and adequate remedy at law and therefore a court of equity will not take jurisdiction. This court has many times held that where a tax or assessment has been levied or imposed where there was no law authorizing it to be levied, courts of equity will interfere and by injunction prevent the collection of such tax. Ordinarily, a party from

whom a tax is illegally collected has an ample remedy at law by an action against the official collecting it or by an action to recover back the money paid, and a court of equity will not interfere to restrain the collection of taxes on the ground of mere informalities or irregularities. But where the tax is unauthorized by law we have held that it was the duty of a court of equity to interfere, especially when the recovery of the tax would necessitate a multiplicity of suits. (*Cook County* v. *Chicago, Burlington and Quincy Railroad Co.* 35 Ill. 460; *Drake* v. *Phillips,* 40 id. 388; *Vieley* v. *Thompson,* 44 id. 9; *Mt. Carbon Coal and Railroad Co.* v. *Blanchard,* 54 id. 240; *Swinney* v. *Beard,* 71 id. 27; *Deming* v. *James,* 72 id. 78; ·*Chicago, Burlington and Quincy Railroad Co.* v. *Cole,* 75 id. 591; *Porter* v. *Rockford, Rock Island and St. Louis Railroad Co.* 76 id. 561; *Siegel* v. *People,* 106 id. 89; *Keigwin* v. *Drainage Comrs.* 115 id. 347; *School Directors* v. *School Directors,* 135 id. 464; *Morrell* v. *Union Drainage District,* 118 id. 139; *Siegfried* v. *Raymond,* 190 id. 424.) As we have seen, this second additional assessment was levied without authority of law. Furthermore, if equity does not interfere it will cause a multiplicity of suits at law, either to prevent the collection or to recover the taxes after they have been illegally collected. Nothing is said to the contrary in *Williams* v. *Dutton,* 184 Ill. 608, *Correll* v. *Smith,* 221 id. 149, or *Shriver* v. *McGregor,* 224 id. 397, cited and relied upon by appellants. In these cases the tax in question was levied under authority of law, but an attempt was made to enjoin its collection on the ground of some irregularity or informality in the proceedings. What is said in those opinions is in entire harmony with the rules of law laid down in the decisions heretofore cited.

Finding no error in the record the decree of the circuit court will be affirmed.                    *Decree affirmed.*