414

WESTERN ELECTRIC COMPANY, INCORPORATED, 1370; THE BORDEN COMPANY, 1371; BORDEN'S FARM PRODUCTS CO. OF ILLINOIS, 1372, Claimants, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 9, 1929.*
*Rehearing denied January 15, 1930.*
*Modified opinion filed September 10, 1930.*

CUTTING, MOORE & SIDLEY, for claimants.

OSCAR E. CARLSTROM, Attorney General; DAVID J. KADYK, Assistant Attorney General, for respondent.

Mr. JUSTICE THOMAS delivered the opinion of the court:

These cases are claims for the refund of franchise taxes paid by claimants. The amount claimed by the Western Electric Company is $7,175.72, by the Borden Company $3,049.85, and by Borden's Farm Products Company $1,909.90. The Attorney General has filed a demurrer to the declaration in each case, and, as the same questions are involved in all of them, they will be consolidated and decided together.

Claimants are foreign corporations licensed to do business in Illinois. Each company filed the returns with the Secretary of State required by law. The Secretary thereupon assessed a franchise tax against each of claimants. Upon the assessment of the tax each claimant protested to the secretary that the tax so assessed was illegal and void for the reason that the law under which it was assessed was uncon-

stitutional. To prevent the Secretary from enforcing the penalties provided by the law for the non-payment of the taxes each claimant paid the tax assessed against it. Within thirty days after the tax was paid each of the claimants filed a suit in the Circuit Court of Sangamon County to restrain the Secretary from paying the tax paid by it into the State Treasury and for an order directing him to refund or repay the tax to the complainant. The court granted a temporary injunction as to a portion of the tax in each case and, on a final hearing, ordered the Secretary to repay such portion to the complainant, but refused to order the balance of the tax paid refunded. From this decree no appeal was taken, or writ of error sued out to review it.

It is fundamental in our law that a judgment or decree is binding upon all parties to the action so long as it stands unreversed. The suits were based upon the allegation that the statute under which the taxes were assessed was unconstitutional, and claimants could have had their cases reviewed by the Supreme Court if they were not satisfied with the decree of the circuit court. They elected not to do so, for what reason does not appear and is not material. This court has no appellate jurisdiction to review the judgments and decrees of the regularly constituted courts of the State, and it will not adjudicate upon a case where the claimant has an adequate remedy in the courts of general jurisdiction. (*Moline Plow Co.* v. *State*, 5 *Ct. Cl.* 277.) The demurrer is sustained, the claims denied, and the cases dismissed.

On May 9, 1929, upon petition for rehearing the following additional opinion was filed:

Claimants filed a petition for a rehearing in these cases, and the court relaxed the rules and permitted them to support their petition by oral and written argument. We have again carefully considered the record in the cases and the argument in support of the rehearing and file this as supplemental to the opinion heretofore filed.

The General Incorporation Act in force at the time these taxes were paid required the Secretary of State to notify each corporation, not later than May 15th, of the amount of such tax assessed against it, and the declarations allege the required notice was given in each case. The Act also pro-

vided the taxes did not become delinquent and that penalties could not be added until after July 31st. The Act further provided that if the tax was not paid on or before July 31st the Secretary of State might issue a warrant for their collection, and gave him the right to revoke the certificate of authority of a foreign corporation failing to pay its tax on or before that date.

The declarations charge the Secretary of State demanded payment of the taxes on the assumption that they were lawful franchise taxes; and that the claimants protested to him against the payment of the taxes on the ground that the statute was not valid and constitutional and that the taxes, and each and every part thereof, were not authorized by law and that they were not required to pay them. The declarations also allege the Secretary of State threatened, if the taxes were not paid, to assess the penalties provided by law and revoke the authority of claimants to transact business in Illinois; and that the taxes were paid under protest and duress as shown by the letters of claimants attached to the declarations and made part thereof. The letters show the payments were made "to avoid penalties and controversies and litigation for failure so to do and without prejudice to the right of the company to seek to recover later the whole or any part thereof. The grounds of this protest are that the provisions of the Act entitled an Act in relation to Corporations for Pecuniary Profit in force July, 1919, and as amended by an Act in force July, 1921, and as further amended by an Act approved by the Governor May 3, 1923, impose an unconstitutional, unjust and unlawful tax upon this company in violation of its rights under the Constitution of the United States and the Constitution of the State of Illinois."

Claimants paid these taxes, as they say, "to avoid penalties and controversies and litigation for failure so to do." Payment of money to avoid penalties and the expenses of litigation will be deemed a voluntary payment and cannot be recovered. (21 R. C. L., p. 151, sec. 176; *People* v. *Bandy*, 239 Ill. App. 273.)

The fact that the taxes were illegal does not, of itself, give claimants the right to recover them. When claimants paid these taxes they knew the law under which they were assessed was unconstitutional, and protested against paying

them on that ground. "That a tax voluntarily paid cannot be recovered back the authorities were generally agreed, and it is immaterial in such a case that the tax has been illegally laid or even that the law under which it was laid was unconstitutional. The principle is an ancient one in the common law and is of general application. Every man is supposed to know the law, and if he voluntarily makes a payment which the law would not compel him to make, he cannot afterwards assign his ignorance of the law as a reason why the State should furnish him with legal remedies to recover it back." (Cooley on Taxation, 2nd Ed., p. 809; *Board of Education* v. *Toennings*, 297 Ill. 469.) Proof that one party is under no legal obligation to pay the money and that the other has no right to receive it is of no consequence unless the payment was compulsory, in the sense of depriving the one making the payment of the exercise of his free will. (*Ill. Glass Co.* v. *Chicago Tel. Co.*, 234 Ill. 535; *School of Domestic Arts* v. *Harding*, 331 Ill. 330.)

It is clear from these well settled principles of law claimants are not entitled to recover these taxes unless they were paid under duress, for it is axiomatic that the tax must not only have been paid under protest but also under duress. A party who has paid a tax voluntarily, under a claim of right, shall not afterwards recover back the money, although he protested at the time against his liability. But it is otherwise when a party is compelled, by duress of his person or goods, to pay money for which he is not liable. When one is called upon, peremptorily, to pay a tax for which he is not liable and can save himself and his property in no other way than by paying the illegal demand, he may give notice that he so pays it by duress, and not voluntarily, and by showing he is not liable to recover it back. (*Conkling* v. *City of Springfield*, 132 Ill. 420.) To constitute duress the danger must not only exist, but must be shown to have actually operated upon the mind, and to have constituted the controlling motive for the performance of the act sought to be avoided. (*Yates* v. *Royal Ins. Co.*, 200 Ill. 202.) To render a payment compulsory such pressure must be brought to bear upon the person or property, and the compulsion must furnish the motive for the payment sought to be avoided. (*School of Domestic Arts* v. *Harding, supra.*) Tested by these rules were the taxes

paid under duress? We do not think so. Claimants were notified of the amount of taxes due not later than May 15th. The taxes were not payable until the first day of July following and could not be declared delinquent until August the first thereafter. No warrant for their collection was in the hands of the sheriff and none could be issued until August 1st. The Secretary of State had no right or power to cancel or revoke their certificates of authority, to do business in Illinois, or to add any penalties to the taxes, or to take any steps to collect them, or in any way to interfere with claimants in the conduct of their business because or on account of their failure to pay the taxes until August first. Claimants were in no immediate danger of suffering any injury to their property or right to do business in the State. The law gave them until the end of July to determine what action they desired to take. They knew the Secretary of State believed the taxes legal: they believed them to be illegal—that the law under which they were assessed was unconstitutional. No fraud or deception was practiced upon them by the Secretary of State. With the knowledge of these facts claimants paid the taxes. The law under which the taxes were assessed was unconstitutional, and the Secretary of State had no power under it to revoke the certificates of authority issued to claimants authorizing them to do business in this State. Neither did he have the right to assess any penalties against claimants for not paying the taxes or to issue a warrant to any sheriff directing him to sell property of claimants to pay the taxes. The taxes were void and claimants could have maintained a bill in equity against the Secretary of State to restrain him from collecting them. It has been many times held by the Supreme Court of this State that where a tax or assessment has been levied or imposed where there was no law authorizing it to be levied courts of equity will interfere and by injunction prevent the collection of such tax, and the tax payer is not required to exhaust his legal remedies before he may apply to equity for relief. (*Drainage Comrs.* v. *Kinney,* 233 Ill. 67; *Sanitary Dist.* v. *Board of Review,* 258 Ill. 316; *St. Louis Bridge Co.* v. *Eisele,* 263 Ill. 50; *Baltica Ins. Co.* v. *Carr,* 330 Ill. 608.) By invoking the aid of a court of equity claimants could have been relieved from the payment of any of the taxes and from the danger of having their

certificates of authority to do business in Illinois revoked. They had ample time to do that after receiving the notices of the amounts of the taxes claimed. Their payment of the taxes under these circumstances was not compulsory. "The rule allowing a person to recover money which he has paid, on the ground that it was paid under compulsion, is intended for the relief only of those who are entrapped by sudden pressure into making such payments, and who have no other means of escaping an existing or iminent infringement of their rights of person or property. Therefore where a person has time and opportunity to relieve himself from his predicament without making such payment by resorting to ordinary legal methods, but nevertheless pays the money, the payment will be deemed voluntary, and he can not recover it." (21 R. C. L., p. 151, Sec. 176.) In *Illinois Merchants Trust Co.* v. *Harvey,* 335 Ill. 284, on page 292, our Supreme Court says: "If he (the payer of an illegal demand) may avoid the payment of such demand by resorting to a remedy in equity but does not avail himself of such remedy the payment is not compulsory even though pressure for payment is re-enforced by a threat to commit injury."

The declarations all allege the Secretary of State, between February 1st, and May 15th of each year, gave notice of the amount of taxes due from each claimant for the year beginning the first day of July following. As the taxes were not delinquent until August 1st claimants had 75 days within which to invoke the aid of a court of equity to avoid the payment of the taxes claimed. This was ample time in which to apply for such relief. It follows that the payment of the taxes was voluntary and not under compulsion or duress. (*Illinois Merchants Trust Co.* v. *Harvey, supra.*) "It is well settled that in the absence of fraud taxes so paid cannot be recovered, even though they are illegal because laid under an unconstitutional law, where there is no statute authorizing such recovery." *Richardson Lubricating Co.* v. *Kinney,* 337 Ill. 122.)

As claimants had an adequate remedy in the courts of general jurisdiction to avoid the payment of the taxes and failed to avail themselves of that remedy but elected to pay the taxes the payment will be deemed voluntary, and the petition for a rehearing denied.

On September 10, 1930, upon an amended stipulation of facts the following modified opinion was filed:.

Since the filing of the petition for a rehearing in these cases an amended stipulation of facts has been filed. It appears from this amended stipulation that the Western Electric Company, in its bill for injunction, asked to have the Secretary of State restrained from paying into the State Treasury, the taxes in question paid by it. It thus appears this claimant did all the law requires in order to entitle it to an award for the return of the taxes. The opinions heretofore filed herein are modified to the extent of allowing the Western Electric Company an award in the sum of $6,278.22 and in all other respects are adhered to, and the petition for a rehearing is denied.