(No. 21781.—

THE PEOPLE *ex rel.* Elsie Decker, County Collector, Appellant, *vs.* WALTER LANGLOIS *et al.* Appellees.

*Opinion filed June 16, 1933—Rehearing denied October 4, 1933.*

LATHAM CASTLE, State's Attorney, and HEMPSTEAD & GREEN, for appellant.

LORD & PARKER, and POUST, FISK & MOUDRY, for appellees.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

To the application of the county collector of DeKalb county to the county court of that county for judgment against the lands of appellees, twenty-three in number, for a special assessment levied by Union Drainage District No. 3, they filed twenty-eight original objections and two additional objections. Some of the objections were waived or withdrawn, some were sustained and others were over-ruled by the county court, which denied judgment for the portion of the assessment extended for three items in the certificate of levy and entered judgment against the lands for the portion of the assessment extended for two other items in the certificate. The county collector has appealed and appellees have assigned cross-errors on the record..

Union Drainage District No. 3 was organized under the Farm Drainage act and embraces lands in Kane and DeKalb counties. On May 27, 1931, the commissioners of the district made a levy of the assessment to which the ob-

jections relate, after stating substantially the following facts found in a resolution adopted by them:

The commissioners of this district have heretofore filed a petition in the county court of Kane county to annex lands to said district and have entered an order in the cause annexing a large quantity of the lands to the district which have been deriving a benefit from the ditch in the district by reason of the lands having been connected to the ditch by artificial drains. They have heretofore caused a new classification to be made of all the lands included in the drainage district upon its organization and also the lands which have been annexed to the district. At the time of making the new classification they contemplated cleaning out all or a portion of the ditch in the district and removing the willows and other obstructions therefrom, and to that end they caused a survey and profile of the ditch in the district to be made by John W. Wilson, an engineer, and also an estimate of the expense of cleaning out the ditch in the district. The district is indebted to the Virgil State Bank to cover warrants heretofore issued by the district for balance due the contractor who cleaned out the ditch in the district the last time it was cleaned out. The district is also indebted to said bank for money borrowed by the commissioners to cover the expense of killing the thistles on the right of way and repair work in the district. The district is also indebted for expenses incurred in having willows cleaned out of the ditch and other obstructions removed therefrom, and is also indebted for expenses incurred for attorney's fees, engineer's fees and expenses, commissioners' fees, and other expenses incurred in proceedings to annex said lands to the district and in making the survey and profile of the ditch, and current expenses in maintaining the ditch in proper condition to give the lands adequate drainage, and the commissioners have no money on hand with which to pay any part of said indebtedness but find it necessary to levy an assessment against the lands in

the district for the payment thereof. It was therefore resolved by the drainage commissioners that the sum of $16,321.48 be raised by special assessment upon the lands of the district, the same to be apportioned to the several tracts of land in the district according to the acres of each and the classification as shown on the graduated scale, tabulation of which had been filed with the town clerk in the township of Virgil; that said amount be apportioned to the different items of indebtedness of the district as follows:

For indebtedness to the Virgil State Bank to cover the amount of warrants heretofore issued by the district for the payment of balance due for cleaning out ditch the last time it was cleaned out, and interest on said warrants ... .......................................... $3100.00

Amount due the Virgil State Bank for moneys borrowed for killing thistles and other repair work....... 1550.00

Amount owing by the district for cutting willows in the ditch in the district and other repair work........ 1050.00

For fees of commissioners........................ 1025.00

For engineer's and attorney's fees and expenses and incidental expenses in connection with adding lands to the district and levying this assessment and making survey and profile of the ditch in the district............ 4180.00

For future maintenance of the ditch and keeping the same free from thistles, willows and other obstructions.. 5416.48

Total .. ....................................$16,321.48

By another resolution adopted by the commissioners on January 23, 1932, the assessment levied by the resolution of May 27, 1931, was reduced to $10,881. The resolution of January 23, 1932, recited that it had been determined by the commissioners that it was not advisable to make an assessment for the maintenance of the ditch and keeping it free from thistles, willows and other obstructions, and without an assessment for such purpose it was not necessary to collect more than two-thirds of the total assessment that had been levied. It is apparent that said resolution had the effect of eliminating from the assessment theretofore levied the item of $5416.48 for maintenance of ditch, etc.

The parties to the case in this court recognize that that was its effect and the county court apparently so regarded it.

The county court sustained appellees' objections to the following items: $3100 for indebtedness to the Virgil State Bank due for cleaning out ditch, $1550 due to said bank for money borrowed for killing thistles, etc., and $4180 for engineer's fees, attorney's fees, expenses, etc. The court overruled the objections and entered judgment for the portion of the assessment levied to pay the items of $1050 for money owed by the district for cutting willows in the ditch of the district and other repair work, and of $1025 for fees of the commissioners.

Among the objections made was one alleging that the entire assessment was invalid because made to pay indebtedness and expense incurred prior to the making of the levy. In view of the conclusion that we have reached it will be unnecessary to state the other objections.

It is well established by the decisions of this court that a drainage district organized under the Farm Drainage act cannot levy an assessment to pay for an indebtedness incurred in advance of the levy. (*Drainage Comrs.* v. *Kinney,* 233 Ill. 67; *People* v. *Brown,* 253 id. 578; *Vandalia Drainage District* v. *Hutchins,* 234 id. 31.) The only authority given by said act for any district, after it has been organized and the original drainage works of the district have been constructed, to levy an assessment to pay for repair work already done, is contained in section 70 of the act, which authorizes a levy to pay for repair work where a levy to pay for such work was made before it was done and there was a shortage or deficiency in the amount levied for such purpose. (*People* v. *Brown, supra.*) By its express terms section 70 applies only to special drainage districts, and there is no similar provision in any other section of the statute applicable to union drainage districts for the levy of an assessment to pay for repair work already done, even to the limited extent authorized in special drain-

age districts by section 70. Section 41 of the act provides that after the completion of the work of the district the commissioners shall thereafter keep the same in repair and shall use the corporate funds for such purpose, and that "in all cases, if sufficient funds are not on hand, the commissioners shall make a new tax levy." Section 63 of the act provides that if an assessment made for doing work in the district proves inadequate to complete the work the commissioners may make such additional levy or levies as may be necessary to complete the work, and that such additional levy or levies shall be made on the original classification for the first assessment. The provisions of section 63 for additional assessments are applicable to union drainage districts but do not authorize the levy of an assessment to pay an indebtedness incurred prior to the making of the assessment. *Drainage Comrs.* v. *Kinney, supra.*

The showing made by the record as to the item of $3100 in the levy of the assessment in this case is that it was to pay an indebtedness to the Virgil State Bank, as evidenced by a warrant issued by the district on May 24, 1918, for payment of a balance due for cleaning out the ditch the last time it was cleaned out and interest on such indebtedness. There is no showing in the record that prior to the time the ditch was cleaned out an assessment was made to pay for that work. Appellant states in her brief that in 1916 an assessment was made to clean out the ditch, but that, while the amount of the levy was sufficient for that purpose, there was a deficiency to pay the cost of the work, caused by a failure to collect all of the assessment. That may be true, but a careful examination of the abstract and the record itself fails to show that there was any such proof made in the county court. It should also be noted that the resolution of the commissioners making the levy in this case, and the other evidence, show that it is made on a new classification of the lands of the district made since 1918. Section 63 of the act provides that addi-

tional assessments to complete work for which a prior assessment has proved inadequate shall be made on the original classification for the first assessment.

As to the other items in the assessment, the resolution making the assessment shows that the respective amounts thereof are for indebtedness and obligations incurred before the assessment was made. There is no showing, and in fact it may be taken as conceded by appellant, that no assessment to meet these items was levied to pay such expense prior to the time it was incurred. The testimony of N. J. Keifer, one of the commissioners of the drainage district, shows that the indebtedness covered by the item of $1550 was incurred in 1930; that the commissioners' fees and engineer's and attorney's fees, and incidental expenses in connection with adding lands to the district, etc., were all expenses incurred prior to the levy of the assessment. The evidence shows that in 1930 the commissioners contemplated making an assessment for cleaning out the ditch of the district and also taking the necessary steps to annex to the district lands benefited by the work of the district but not included in its boundaries; that the commissioners' fees, engineer's fees, attorney's fees, etc., were incurred in making a survey and profile of the ditch and in taking the necessary steps to enlarge the boundaries of the district. No assessment was made to clean out the ditch and no assessment to pay any of this expense was made prior to the time it was incurred.

Appellant argues that fees and expenses incurred in making estimates of cost and doing necessary preliminary work before an assessment is made may be included in such assessment, and cites *Vandalia Drainage District* v. *Hutchins, supra*. That case involved an assessment made by a drainage district organized under the Levee Drainage act, and what was there said covering preliminary expenses was said with reference to such expenses incurred before making the assessment to cover the original work of the dis-

trict. Whatever might be the rule as to such preliminary expenses as are there referred to, it can have no application to this case. The original work of the district in this case was done many years ago, and no item in the levy made in this case is for doing any work whatever in the district after the levy was made. Appellant refers to section 26½ of the act, but that section is not applicable to this case. It provides for abandonment of work proposed to be done by a district at any time before the commissioners enter into a contract for the work "for which an assessment has been made in such district." The record in this case does not show an abandonment of any proposed work for which an assessment had been made. There is no section of the statute that authorizes the district in this case to make a levy for commissioners' fees, attorney's fees, engineer's fees or other expense incurred before the levy is made, where such fees and expense are incurred as they were in this case.

It is true, as pointed out, that the collector, by the introduction of the delinquent list, with proof of publication of notice of application for judgment, makes out a *prima facie* case, and that the presumption is that the taxing or assessing officers have performed their duty and that the assessment is valid. (*People* v. *Hulin,* 237 Ill. 122.) The *prima facie* case must prevail unless there is evidence in support of the objections to the tax or assessment, and it casts the burden of producing evidence upon the objector. Where such evidence in support of the objection is produced the collector must meet it and the issue be determined from the evidence. (*People* v. *Whitesell,* 262 Ill. 387.) In this case, by the introduction in evidence of the resolution of the drainage commissioners making the levy, which on its face shows that the assessment was made to pay indebtedness theretofore incurred, and by other evidence, the appellees overcame the *prima facie* case and proved that the entire assessment was made for a purpose for which the commissioners had no authority to make such assessment.

The county court did not err in sustaining the appellees' objections as to the three items of the assessment to which objections were sustained.

In *People* v. *Vogt,* 262 Ill. 170, it was pointed out that section 192 of the Revenue act provides that no appeal from a judgment for sale of lands or lots for taxes shall be allowed or any writ of error to such judgment operate as a *supersedeas* "unless the party praying such appeal or desiring such writ of error, shall before taking such appeal or suing out such writ of error, deposit with the county collector an amount of money equal to the amount of the judgment and costs," and that from the provisions of that section of the statute it was the evident intention of the legislature to require a person to deposit money for payment of the taxes objected to before he could question, on appeal, the judgment of the county court overruling his objections. It was held in that case that an appellee could not, by assigning cross-errors on the record in case of an appeal by the county collector from the judgment of the county court sustaining objections as to certain items of a tax levy, raise any question as to the judgment overruling his objections as to other items of the tax levy. The decision in that case has been followed in an unbroken line of decisions of this court. *People* v. *Schaefer,* 266 Ill. 334; *People* v. *Insurance Exchange Building,* 288 id. 486; *People* v. *Chicago and Alton Railway Co.* 289 id. 282; *People* v. *New York Central Railroad Co.* 296 id. 187; *People* v. *Chicago and Eastern Illinois Railway Co.* 310 id. 257; *People* v. *Wabash Railway Co.* 311 id. 579; *People* v. *Baltimore and Ohio Railroad Co.* 319 id. 366.

The cross-errors of appellees questioning the judgment of the county court overruling their objections to the items of $1050 for money owed by the district for cutting willows in the ditch of the district and other repair work and of $1025 for fees of commissioners cannot be considered.

The judgment of the county court is affirmed.

*Judgment affirmed.*