# JAMES C. CONKLING

## v.

# THE CITY OF SPRINGFIELD.

*Filed at Springfield March 31, 1890.*

1. RECOVERING BACK MONEY PAID—*of voluntary payment, and payment under duress.* One voluntarily paying money, under a claim of right, can not afterwards recover it back, although he may have protested at the time against his liability. But it is otherwise when a person is compelled, by duress of his person or goods, to pay money for which he is not liable. Such payment is not voluntary, but compulsory, and he may rescue himself from such duress by payment of the money, and afterwards, on proof of the fact, recover it back.

2. RECOVERY BACK OF ILLEGAL TAXES PAID—*whether paid under compulsion, or voluntarily.* Where a person not liable to taxation is called on, peremptorily, to pay, under a warrant, and he can save himself and his property in no other way than by paying the illegal demand, he may give notice that he pays it by duress, and not voluntarily, and, by showing that he is not liable, recover it back as money had and received.

3. As neither the town nor the county collector has any power, by law, to collect taxes on real estate by distraint and sale of personalty, it follows that a payment of such taxes is not a payment under duress, though made under protest, and the party so voluntarily paying can not thereafter sue for and recover back the money paid, although the tax may be illegal.

4. Where taxes on personal property are demanded by the collector according to law, and, on refusal to pay, the collector attempts to levy on personal property, the party charged with the taxes may, to avoid a levy and sale, pay under protest, and insist that the payment was made by compulsion, and if the tax is illegal, recover the same back.

5. In an action by a tax-payer against a city, to recover back an illegal tax of the city, it appeared that he, without any previous demand by the collector, paid the same, through his agent, who at the time protested that the city taxes were illegal: *Held*, that the payment could not be regarded as compulsory or as made under duress as to either the taxes on real estate or personalty, and that they could not be recovered back.

6. REVENUE OF A CITY—*in what funds payable.* Section 155 of the Revenue law provides that the revenue for city purposes shall be collected in gold and silver coin, United States legal tender notes, current national bank notes, city comptroller's, city auditor's or city clerk's

warrants, or orders on the city treasurer, and in no other currency. While this law is in force the city council has no power to authorize the payment of its taxes in city comptroller's certificates of illegal taxes paid.

7. So where an ordinance of a city directed the city comptroller to issue a certificate, in a certain form, for illegal taxes which the city had received, and attempted to make such certificates receivable for city taxes: *Held,* that such ordinance could not be construed as an agreement on the part of the city to refund such illegal taxes, and that the city council had no power to pass the ordinance making such certificates receivable for city taxes.

8. DISTRAINT FOR TAXES—*as to taxes on real and personal property.* A tax collector has no authority, under the statutes, to levy on personal property for taxes on real estate. If payment is refused, it is his duty to return the land as delinquent, to the county collector, who can collect the same only by obtaining judgment and selling the land.

9. Before a town collector is authorized to levy on property for a personal property tax, he is required by the statute to call on the person taxed, at least once, at his place of residence or business, if in the town, and demand payment of the tax.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

Mr. JAMES C. CONKLING, *pro se:*

A city may issue evidences of its indebtedness in any form it may see proper, even without express authority in its charter. *Galena* v. *Corwith,* 48 Ill. 424.

The doctrine of estoppel *in pais* applies to municipal corporations. *Martel* v. *East St. Louis,* 94 Ill. 67; *Goodrich* v. *Milwaukee,* 24 Wis. 422.

Though a security may be void, plaintiff may recover as for money had and received. *Insurance Co.* v. *Kipp,* 8 Cow. 24.

The duty to refund is a sufficient consideration for the promise. *State* v. *Heath,* La. Ann. 1721.

The city had the power to agree to refund the illegal taxes paid. *East St. Louis* v. *Gas Co.* 98 Ill. 427; *Lyons* v. *Cook,* 9 Bradw. 546.

Mr. TIMOTHY McGRATH, City Attorney, for the defendant in error:

To authorize à recovery, three things must concur: The tax must have been illegal and void, it must have been paid under compulsion or its legal equivalent, and it must have been paid over by the collecting officer and been received to the use of the city.   *Lyons* v. *Cook*, 9 Bradw. 545; *Conkling* v. *Springfield*, 19 id. 168; Cooley on Taxation, 565.

If the tax was not paid by compulsion, it can not be recovered back.   Cooley on Taxation, 566; 2 Desty on Taxation, 791.

Plaintiff in error was not liable to distress of his goods until demand.   *Stover* v. *Mitchell*, 45 Ill. 213; *Swanston* v. *Ijams*, 63 id. 165; *Chicago* v. *Fidelity Bank*, 11 Bradw. 165; *Railroad Co.* v. *Dodge County*, 8 Otto, 541.

Mr. JUSTICE CRAIG delivered the opinion of the Court:

This was an action of assumpsit, brought by James C. Conkling, in the circuit court of Sangamon county, against the city of Springfield, to recover certain taxes which had been paid to the city under protest, and which were claimed to be illegal. The taxes were due in part on personal and in part on real property.

In the opinion of the Appellate Court will be found a quotation from the evidence of plaintiff's agent, showing the manner of payment and character of protest, as follows: "I went into the tax office, and saw that the receipts were made out, and paid over the money for plaintiff.   There were objections made to some of these taxes by the general public.   It was generally understood the books contained illegal taxes for those years.   My attention was called to it in this way, and we were objecting to the payment of the full amount as levied.   As payments were made, I verbally protested for plaintiff against the amount of taxes, because of a portion of the city taxes being illegal.   I paid them for plaintiff under protest."

This statement fairly shows what was said and done at the time the payment was made, and it will be observed that no demand had been made by the collector, nor had he made any effort whatever to collect, by distraining or otherwise. As a general rule, where a person is compelled, by duress, to pay an illegal tax for which he is not liable, he may recover it back. The rule on this subject is well stated by SHAW, C. J., in *Preston* v. *Burton,* 12 Pick. 13, as follows: "A party who has paid voluntarily, under a claim of right, shall not afterwards recover back the money, although he protested at the time against his liability. * * * But it is otherwise when a party is compelled, by duress of his person or goods, to pay money for which he is not liable. It is not voluntary, but compulsory, and he may rescue himself from such duress by payment of the money, and afterwards, on proof of the fact, recover it back." "The warrant to collect * * * is in the nature of an execution. * * * When, therefore, a party not liable to taxation is called on, peremptorily, to pay upon such a warrant, and he can save himself and his property in no other way than by paying the illegal demand, he may give notice that he so pays it by duress, and not voluntarily, and by showing that he is not liable, recover it back as money had and received." The rule in the case cited was approved by this court in *Bradford* v. *City of Chicago,* 25 Ill. 415. The same rule was sanctioned by the Supreme Court of the United States in *Union Pacific Railroad Co.* v. *Dodge County Comrs.* 8 Otto, 541.

It is manifest, on a moment's reflection, that the facts relied upon here do not bring the case within the rule announced in the cases cited. So far as the tax on real estate is concerned, the town collector had no authority, under the statute, to levy on personal property. If payment was refused, it was his duty to return the land delinquent to the county collector, and the county collector, in case payment was not made to him within the time prescribed by the statute, could only collect by obtain-

ing judgment and selling the land. As to the personal property tax, the collector held a warrant which authorized him to levy on personal property, but before he was authorized to levy, section 155 of the Revenue law required him to call on the person taxed, at least once, at his place of residence or business, if in the town of the collector, and demand payment of the tax. This had not been done when the taxes were paid, and while the collector held a warrant, as he could make no levy at the time the taxes were paid it can not be held that the payment was a compulsory one. Had the taxes been demanded by the collector, and after demand he had attempted to levy on personal property, and to avoid a levy and sale the plaintiff had paid under protest, then he might well insist that the payment was made by compulsion; but such is not this case.

One other question remains to be considered. It is claimed that the city of Springfield admitted the illegality of the tax, and agreed to refund it, and it is urged, as we understand the argument, that under such circumstances the city is liable, although the taxes were not paid by compulsion. If the city of Springfield had received from the plaintiff a sum of money in payment of illegal or void taxes, and after having received the money agreed to refund the amount so received, we see no reason why an action might not be maintained upon such an agreement. But the trouble here is, the evidence disclosed no agreement to refund. On the 12th day of September, 1878, the city of Springfield passed the following ordinance:

"Section 1. That whenever any owner of real estate or personal property in this city, taxed for the years 1875, 1876 or 1877, shall present to the comptroller a tax receipt, signed by the collector of Sangamon county, for either of said years, showing that he has paid, on the equalized valuation of said real estate or personal property, city taxes, for the year 1875 in excess of $1.50 on the $100; or for the year 1876 in excess of $1.56 cents on the $100; or for the year 1877 in excess of

$1.64$\frac{8}{10}$ on the $100, it shall be the duty of said comptroller to ascertain the amount of said excess, and to issue in the name of the person mentioned in said receipt, a certificate, in substance as follows:

" 'This is to certify that A. B. has paid . . . . . dollars and . . . . . cents illegal taxes on the following described real estate (or personal property, as the case may be,) in Springfield, Ill., for the year 187 . . , and this certificate shall be received as so much money by the city treasurer, from the collector of Capital township, or collector of Sangamon county, or other officer authorized by law to receive city taxes, whenever presented to said treasurer, in settlement of taxes.

C. D., *City Comptroller.*'

"The collector of Capital township and Sangamon county, or other officer authorized by law to receive city taxes, are hereby authorized to receive said certificates in payment of city taxes."

Under the provisions of this ordinance, the plaintiff presented his tax receipts to the city comptroller, and obtained a certificate, as follows:

"SPRINGFIELD, ILL., *October 3, 1878.*

"This is to certify that James C. Conkling has paid $1005.37 illegal taxes on the following described property in Springfield, Illinois, for the year 1875, and this certificate shall be received as so much money by the city treasurer from the collector of Capital township, or the collector of Sangamon county, or other officer authorized by law to receive city taxes, whenever presented to said treasurer in settlement for taxes.

C. O'CROWLEY, *City Comptroller.*"

Three other like certificates were issued on account of illegal taxes, all amounting to $1669.99. The ordinance, and papers issued under it, are relied upon as evidence of an agreement to refund. These certificates the city treasurer of Springfield refused to accept from the town or county collector, as money,

and they refused to accept them from plaintiff in payment of taxes. We do not regard the ordinance, or the papers issued under the ordinance, as constituting an agreement, on behalf of the city of Springfield, to refund the money paid by plaintiff on account of illegal taxes. The ordinance doubtless may be regarded as an acknowledgment of the illegality of the taxes; but it does not, in terms or by implication, contain anything from which it may be inferred that the city or its treasurer should repay the money. The ordinance, when duly considered, will admit of but one construction. It directs the comptroller to issue a certificate, in a certain form, for illegal taxes which the city had received, and it attempts to make that certificate receivable for city taxes. Such is, in substance, the ordinance. Section 155 of the Revenue act (Starr & Curtis, 2074,) provides, that "the revenue for city purposes shall be collected in gold and silver coin, United States legal tender notes, current national bank notes, city comptroller's, city auditor's or city clerk's warrants, or orders on the city treasurer, and in no other currency." While this section of the statute remained a law of the State, it is manifest that the city of Springfield had no power, by ordinance, to direct that the city taxes should be paid in any funds different from those named in the statute, and as this certificate executed by the comptroller did not fall within the kind of funds receivable, under the statute, for city taxes, the ordinance was nugatory. Whether the city had the power to appropriate money out of the city treasury to repay illegal taxes, it is not necessary to decide, as the city did not attempt to do so; but it is manifest that the city had no power to provide that a certificate like the one in question should be received in payment of taxes.

So far as appears, the judgment of the Appellate Court is correct, and it will be affirmed.

*Judgment affirmed.*