(No. 1335— )

OAKFORD & FAHNESTOCK, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed November 12, 1930.*

HUNTER, KAVANAGH & McLAUGHLIN, for claimant.

OSCAR E. CARLSTROM, Attorney General; DAVID J. KADYK, Assistant Attorney General, for respondent.

Mr. JUSTICE THOMAS delivered the opinion of the court:

Claimant is an Illinois corporation engaged in the wholesale grocery business. It alleges in its declaration that for the years 1923 to 1926 inclusive the Secretary of State demanded and insisted upon receiving the sum of $800.00 as a franchise tax for each of those years, basing his contention upon the claim that the franchise tax assessable should be assessed not against the outstanding capital stock of claimant, but upon the authorized capital stock, and that thereupon claimant did, under protest, pay such tax so demanded by the Secretary of State; that the difference between the taxes demanded and paid and the amount lawfully due for those years is $576.05; and that the Secretary of State was unable to refund the taxes so lawfully collected because he had paid them over to the State Treasurer. To this declaration the State has filed a general demurrer.

The contention of claimant is that the law under which the taxes were assessed and collected was unconstitutional and the Secretary of State had no legal right to collect them and they should, therefore, be refunded by the State.

It is fundamental that a tax voluntarily paid cannot be recovered back. The fact that the law under which the tax is laid and collected is unconstitutional does not of itself give the right to have it refunded. No one is required to pay an illegal tax, and no officer can legally collect such a tax. Every person is supposed to know the law, and if he voluntarily pays an illegal tax, he cannot afterwards assign his ignorance of the law as a reason for having it refunded to him. (*Board of Education* v. *Toennings,* 297 Ill. 469.) If claimant paid these taxes in ignorance only of its legal rights the fact that it was under no legal obligation to pay them and the Secretary of State had no legal right to collect them is of no consequence unless the payment was compulsory. (*Ill. Glass Co.* v. *Chicago Tel. Co.,* 234 Ill. 535; *School of Domestic Arts* v. *Harding,* 331 Ill. 330.)

It is alleged in the declaration that ''the claimant did, under protest, pay said tax so demanded by the Secretary of State.'' This is not sufficient to relieve the payment of its voluntary character. The Secretary of State claimed the right to collect these taxes, and the fact claimant protested that right at the time of their payment does not give it the right to recover them back. (*Conklin* v. *City of Springfield,* 132 Ill. 420.) Before claimant is entitled to recover them it must also allege they were paid under duress. (*Yates* v. *Royal Ins. Co.,* 200 Ill. 202; *School of Domestic Arts* v. *Harding, supra.*)

Section 112 of the General Corporation Act in force when these taxes were paid provided that between the first day of February and the fifteenth day of May of each year, the Secretary of State should notify each corporation against which a franchise tax was assessed of the amount of such tax assessed against it, and that objection thereto would be heard on request of the corporation on a day not later than the twenty-fifth day of June. There is no allegation in the declaration that this notice was not received. Section 108 of that act provided the tax should be due on July first, and Section 114 that it should not become delinquent until August first. Section 116 provides that if the tax was not paid on or before July thirty-first the Secretary of State should issue a warrant for its collection. Under these provisions of the statute claimant's business could not be interfered with in any way

by the Secretary of State until the first day of August even if·the tax was not paid prior to that time. (*Parker Holladay Co.* v. *Bokum,* 252 Ill. App. 135.) If claimant believed the tax illegal it had ample time after receiving notice of the amount claimed to be due to invoke the aid of a court of chancery to restrain the Secretary of State from attempting to enforce its ·payment. A court of equity will interfere and by injunction prevent the collection of an illegal tax. (*Drainage Comrs.* v. *Kinney,* 233 Ill. 67; *Sanitary District* v. *Board of Review,* 258 Ill. 316; *St. Louis Bridge Co.* v. *Eisele,* 263 Ill. 50; *Baltica Ins. Co.* v. *Carr,* 330 Ill. 608.) .By invoking the aid· of a court of equity claimant could have been relieved from the payment of these taxes if they were illegal. It did not do so but chose to pay the taxes, and it cannot now ask to have them refunded on the ground they were illegal. (*Ill. Merchants Trust Co.* v. *Harvey,* 335 Ill. 21; *R. C. L.,* p. 151, sec. 176.) The taxes were not paid under duress.

But claimant also had another remedy to have the validity of the taxes determined by the court. Section 2A of the act in relation to the payment of the public money of the State into the State Treasury provides that every officer receiving public money paid under protest shall hold such money thirty days and on the expiration of that period deposit the same with the State Treasurer unless the party making such payment shall within that period file a bill in chancery and secure temporary injunction restraining the making of such deposit, in which case such payment shall be held until the final order or decree of the court. Under this statute claimant could have had the legality of the tax decided by a court of general jurisdiction and secured an order for its repayment if the tax was held to be invalid. As claimant had the right to have the legality of the taxes determined by a court of general jurisdiction and failed to do so, the Court of Claims will not take cognizance of it. (*Moline Plow Co.* v. *State,* 5 Ct. Cl. 277.)

For the reasons above stated, the demurrer is sustained and the case dismissed.