RONALD SMITH *et al.*, on Behalf of Themselves and All Other Persons Similarly Situated, Plaintiffs-Appellants, v. PRIME CABLE OF CHICAGO *et al.*, Defendants-Appellees.

First District (5th Division)   No. 1—93—0807

Opinion filed December 8, 1995.

Larry D. Drury, Ltd., of Chicago, for appellants.

Steven H. Frankkel and Karen H. Flax, both of Sonnenschein, Nath & Rosenthal, of Chicago, for appellee Pay-Per-View Network, Inc.

Michael A. Pope, Francis A. Citera, and Raymond F. Benkoczy, all of Pope, Cahill & Devine, Ltd., of Chicago, for appellee Pro-Tours, Inc.

John J. George, of Daley & George, of Chicago, for appellee Prime Cable of Chicago.

JUSTICE GORDON delivered the opinion of the court:

This class action lawsuit alleged breach of contract, fraud, and violation of the Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1991, ch. 121$^1$/$_2$, par. 261 *et seq.* (now 815 ILCS 505/1 *et seq.* (West 1992))) and the Uniform Deceptive Trade Practices Act (Ill. Rev. Stat. 1991, ch. 121$^1$/$_2$, par. 311 *et seq.* (now 815 ILCS 510/1 *et seq.* (West 1992))) and sought compensatory and punitive damages, declaratory judgment, equitable accounting, and injunctive relief. The gravamen of plaintiffs' complaint was that the defendants had distributed, sold, promoted, advertised, sponsored and broadcast a country music concert, entitled "The Judds: Their Final Concert Live," on December 4, 1991, and that the concert lasted two rather than three hours as advertised by the defendants. The plaintiffs were billed $24.95 for the concert and paid that charge on December 21, 1991, 17 days after they viewed the concert and three days after they filed the instant complaint.

Defendant Prime Cable of Chicago (Prime Cable) is a cable television company alleged to promote, advertise, sell and broadcast cable television programs and products to consumers. Pay-Per-View Network, Inc. (Network), is alleged to distribute cable television programs and products for sale to consumers and cable television companies. Defendant Pro-Tours, Inc., is alleged to promote and manage concerts and tours for Naomi and Wynonna Judd, also known as "the Judds."

On August 13, 1992, the trial court dismissed plaintiffs' first verified amended complaint for failure to state a cause of action. With respect to the breach of contract count of that complaint, the trial court noted that the plaintiffs had paid for the concert after viewing it and with knowledge that the concert was only two hours. The court held that this payment acted as a ratification of the two-hour rather than three-hour performance; that the payment was a waiver of any alleged breach; and that the payment affected an accord and satisfaction. As to defendant Pro Tours, the breach of contract count also was dismissed for failure to establish a contractual relationship. Plaintiffs' common law and statutory fraud claims were dismissed for failure to plead fraudulent words as to specific defendants; for failure to plead facts rather than conclusions; and for failure to plead that the concert length was material to the purchase decision. In concluding remarks, the court held that the payment vitiated any cause of action against any of the defendants.

In response to these findings, the plaintiffs filed a second amended complaint and alleged that their payment was made "after a complaint was filed as a protest" and as a result of coercion and compulsion by Prime Cable and/or Network "by threatening to or actually terminating or blocking-out the cable service *** threatening to or actually suing *** for failure to pay and damaging the credit of the Plaintiffs." In support of these allegations, the plaintiffs attached their affidavit in which they stated that they had previously experienced a blackout in cable service, without any prior notice, for failure to timely pay a prior monthly bill.

On November 5, 1992, the defendants filed a joint memorandum in support of their motion to dismiss plaintiffs' second amended complaint; and on November 10, 1992, the plaintiffs voluntarily dismissed their declaratory judgment count.[1] The trial court dismissed the plaintiffs' second amended complaint with prejudice on January 11, 1993. The court ruled that the plaintiffs failed to properly plead duress; failed to establish a protest sufficient at law that predated their payment to Prime Cable; and presented "no legal change in the status of the complaint." The court also incorporated its reasons for dismissal of plaintiffs' first amended complaint as further reasons for the dismissal of the second amended complaint.

The issues presented for review are whether the second amended

---

[1]The plaintiffs also voluntarily dismissed their count alleging duress and dismissed two additional defendants, Cableview Publications, Inc. (incorrectly sued as Cablevision Publications, Inc.), and Eastman Kodak. These defendants are not parties to the instant appeal.

complaint stated causes of action for breach of contract (against Prime Cable and Network), breach of contract implied in law (against Pro-Tours, Inc.), common law or statutory fraud, and for an accounting. In reaching these issues we must also address the impact of the payment of the concert charge, made after their original complaint had been filed, and whether that voluntary payment acted as a waiver of their enforceable rights or operated to bar recovery in the instant action.[2] As the question of class action status was not reached by the trial court, it is not at issue here.

When ruling on a motion to dismiss, all well-pleaded facts in the complaint and those contained in exhibits made a part of the complaint are admitted and taken as true. (*E.g., Michael Reese Hospital & Medical Center v. Chicago HMO, Ltd.* (1990), 196 Ill. App. 3d 832, 554 N.E.2d 472.) A cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved under the pleadings which will entitle a plaintiff to recover. (*E.g., Zadrozny v. City Colleges of Chicago* (1991), 220 Ill. App. 3d 290, 581 N.E.2d 44; *Jursich v. Arlington Heights Federal Savings & Loan Association* (1982), 110 Ill. App. 3d 847, 441 N.E.2d 864.) A motion to dismiss is used to attack defects in a pleading; it does not test the plaintiff's ability to recover where the complaint adequately states a cause of action. *Duhl v. Nash Realty Inc.* (1981), 102 Ill. App. 3d 483, 429 N.E.2d 1267.

■ While the plaintiffs' payment does not indisputably evidence their intent to waive their rights of enforcement, nor does it establish an accord and satisfaction,[3] a further question arises as to whether that payment falls within the voluntary payment doctrine so that plaintiffs cannot recover their payment. In accordance with the voluntary payment doctrine, money voluntarily paid under a claim of right to the payment, and with knowledge of the facts by the person making the payment, cannot be recovered by the payor solely because the claim was illegal. (*Kanter & Eisenberg v. Madison Associates* (1987), 116 Ill. 2d 506, 508 N.E.2d 1053; *West Suburban Hospital Medical Center v. Hynes* (1988), 173 Ill. App. 3d 847, 527 N.E.2d 1086.) Absent fraud, coercion or mistake of fact, monies paid under a claim of right to payment but

---

[2]In order to comply with appellate court page limitations specified by revised Supreme Court Rule 23, those portions of the opinion regarding waiver, accord and satisfaction, joint venture and agency liability, contract implied in law theory, and common law fraud have been designated nonpublishable but can be found in the full text of the opinion of *Smith v. Prime Cable*, docket No. 1—93—0807, filed December 8, 1995.

[3]See footnote 2 *supra.*

under a mistake of law are not recoverable. (*Jursich v. Arlington Heights Federal Savings & Loan Association* (1982), 110 Ill. App. 3d 847, 441 N.E.2d 864.) As noted in 66 Am. Jur. 2d *Restitution & Implied Contracts* § 94, at 1035-36 (1973):

> "The reason [for] the rule *** and its propriety, are quite obvious when applied to a case of payment on a mere demand of money unaccompanied with any power or authority to enforce such demand, except by a suit at law. In such case, if the party would resist an unjust demand, he must do so at the threshold. The parties treat with each other on equal terms, and if litigation is intended by the one of whom the money is demanded, it should precede payment. When the person making the payment can only be reached by a proceeding at law, he is bound to make his defense in the first instance, and he cannot postpone the litigation by paying the demand in silence or under a reservation of the right to litigate the claim, and afterward sue to recover the amount paid."

■ To negate the applicability of the voluntary payment doctrine, one must not only show that the claim asserted was unlawful but also that payment was not voluntary, that there was some necessity which amounted to compulsion. (*Illinois Glass Co. v. Chicago Telephone Co.* (1908), 234 Ill. 535, 85 N.E. 200; *United Private Detective & Security Association, Inc. v. City of Chicago* (1977), 56 Ill. App. 3d 242, 371 N.E.2d 1087. See generally Annot., 79 A.L.R. 655 (1932); Annot., 75 A.L.R. 658 (1931).) The kind of duress necessary to establish payment under compulsion has been expanded over the years. As stated in *Illinois Merchants Trust Co. v. Harvey* (1929), 335 Ill. 284, 289, 167 N.E. 69, 71, *overruled in part by Kanter & Eisenberg v. Madison Associates* (1987), 116 Ill. 2d 506, 508 N.E.2d 1053:

> "At the common law duress meant duress only of person, and nothing short of a reasonable apprehension of imminent danger to life, limb or liberty sufficed as a basis for an action to recover money paid. The doctrine became gradually extended, however, to recognize duress of property as a sort of moral duress, which, equally with duress of person, entitled one to recover money paid under its influence. To-day the ancient doctrine of duress of person (later of goods) has been relaxed, and extended so as to admit of compulsion of business and circumstances. *Illinois Glass Co. v. Chicago Telephone Co.* 234 Ill. 535."

(See generally 3 J. Pomeroy, Equity Jurisprudence § 950 (5th ed. 1941); 13 S. Williston, Williston on Contracts §§ 1601, 1602 (3d ed. 1970); 66 Am. Jur. 2d *Restitution & Implied Contracts* §§ 101, 107 (1973); Annot., 79 A.L.R. 655 (1932).) Under the more liberal and broader definition of duress, recovery of a payment made under a claim of right can occur

"[w]here a person, to prevent injury to himself, his business or property, is compelled to make payment of money which the party demanding has no right to receive and no adequate opportunity is afforded the payor to effectively resist such demand." *Schlossberg v. E.L. Trendel & Associates, Inc.* (1978), 63 Ill. App. 3d 939, 942, 380 N.E.2d 950, 953.

See generally 70 C.J.S. *Payment* § 106 (1987).

■ In order to render a payment compulsory, "such a pressure must be brought to bear upon the person paying as to interfere with the free enjoyment of his rights of person or property, and the compulsion must furnish the motive for the payment sought to be avoided." (*Illinois Glass Co.*, 234 Ill. at 543, 85 N.E. at 201.) There must be some actual or threatened power wielded over the payor from which he has no immediate relief and from which no adequate opportunity is afforded the payor to effectively resist the demand for payment. (*West Suburban Hospital Medical Center*, 173 Ill. App. 3d 847, 527 N.E.2d 1086; see *Schlossberg v. E.L. Trendel & Associates, Inc.*, 63 Ill. 2d 939, 380 N.E.2d 950; See generally 70 C.J.S. *Payment* § 106 (1987).) As stated in *Schlossberg:*

" ' "[T]he real and ultimate fact to be determined in every case is whether or not the party really had a choice—whether he had his freedom of exercising his will." 5 Williston, Contracts (Rev. Ed. 1937) § 1603. The legal conception of economic or compulsory duress is in forcing a person to act against his own will. It does not exist when the person upon whom it had been so charged had an option or choice as to whether he will do the thing or perform the act said to be done under duress.' " 63 Ill. App. 3d at 943, 380 N.E.2d at 954, quoting *Joyce v. Year Investments, Inc.* (1964), 45 Ill. App. 2d 310, 314-15, 196 N.E.2d 24, 26.

Ordinarily, protest is evidence of compulsion and an unwillingness to pay (see *Edward P. Allison Co. v. Village of Dolton* (1962), 24 Ill. 2d 233, 181 N.E.2d 151; *Rosen v. Village of Downers Grove* (1960), 19 Ill. 2d 448, 167 N.E.2d 230; *Harvey v. President & Board of Trustees* (1866), 42 Ill. 336; *Ross v. City of Geneva* (1976), 43 Ill. App. 3d 976, 357 N.E.2d 829, *aff'd* (1978), 71 Ill. 2d 27, 373 N.E.2d 1342), although compulsion may appear from the circumstances without a protest against payment. (*Illinois Glass Co. v. Chicago Telephone Co.*, 234 Ill. 535, 85 N.E. 200; see *Getto v. City of Chicago* (1981), 86 Ill. 2d 39, 426 N.E.2d 844. See generally 13 S. Williston, Williston on Contracts § 1623, at 770 (3d ed. 1970) ("Nor if a payment is obviously coerced will recovery be denied because no protest was made").) Evidence of protest gives effect to the other attending circumstances surrounding the payment and does not conclusively establish compulsion where those circumstances disprove payment under compulsion.

850

See *Conkling v. City of Springfield* (1890), 132 Ill. 420, 24 N.E. 67. See generally 13 S. Williston, Williston on Contracts § 1623, at 772 n.6 (3d ed. 1970); 66 Am. Jur. 2d *Restitution & Implied Contracts* § 112 (1973) (protest without further evidence of compulsion or duress does not impair the operative effect of payment and obviates the previous denial and contestation of the claim); 70 C.J.S. *Payment* § 111, at 91 (1987) ("If there is duress or coercion of some character and there is doubt, under the circumstances, whether or not the payment was voluntary, the fact that a protest was made may be taken into account in determining the question"); Annot., 75 A.L.R. 658 (1931).

■ The issue of duress and compulsory payment generally is one of fact (*Illinois Merchants Trust Co. v. Harvey*, 335 Ill. 284, 167 N.E. 69) to be judged in light of all the circumstances surrounding a given transaction (*Pemberton v. Williams* (1877), 87 Ill. 15; *Schlossberg v. E.L. Trendel & Associates*, 63 Ill. App. 3d 939, 380 N.E.2d 950; *Gerber v. First National Bank* (1975), 30 Ill. App. 3d 776, 332 N.E.2d 615; see *Illinois Glass Co.*, 234 Ill. 535, 85 N.E. 200). However, where the facts are not in dispute and only one valid inference concerning the existence of duress can be drawn from the facts, the issue can be decided as a matter of law including on a motion to dismiss (see *Joyce v. Year Investments, Inc.* (1964), 45 Ill. App. 2d 310, 196 N.E.2d 24). See generally 13 S. Williston, Williston on Contracts § 1602 (3d ed. 1970).

■ In the case at bar, the plaintiffs argue that their complaint sets forth sufficient allegations of payment under compulsion so as to negate the operation of the voluntary payment doctrine. The plaintiffs alleged that their payment was coerced by the defendants "threatening to or actually terminating or blocking out the cable service[,] *** threatening to or actually suing the Plaintiffs and the class for failure to pay and damaging the credit of the Plaintiffs and the class as a result thereof." The plaintiffs also alleged that their payment was made under protest as evidenced by the filing of their original complaint three days prior to their payment.[4] In support of their allegations, the plaintiffs attached their affidavit as an exhibit to

---

[4]The plaintiffs' first verified complaint filed on December 18, 1991, alleged that the plaintiffs "paid" or, alternatively, "tendered the requested consideration of $24.95" to Prime and/or Network. Plaintiffs did not make payment until December 21, 1991, as evidenced by a copy of plaintiffs' check attached as an exhibit to their second amended complaint filed on October 8, 1992. Based on this factual scenario, the inference could be made that payment was not made under protest but, rather, to substantiate plaintiffs' claim of actual damages.

their complaint.[5] That affidavit stated that, on a prior occasion, the plaintiffs had failed to promptly pay a monthly statement from Prime Cable and that as a result of that failure, and without any prior notice, their cable reception was "blacked out *** for fifteen minute intervals for a period of at least three days until the one-month bill had been paid."

The defendants argue that the plaintiffs' complaint did not establish payment under compulsion. Specifically, the defendants contend that the filing of plaintiffs' complaint prior to payment was not evidence of protest; that allegations of threat of a lawsuit or damage to one's credit can never establish compulsion; and that, as in *Butitta v. First Mortgage Corp.* (1991), 218 Ill. App. 3d 12, 578 N.E.2d 116, the plaintiffs' allegations of loss were conjecture and speculative. In support of this latter argument, the defendants state that plaintiffs' complaint is devoid of any allegation of threat to their cable service since the plaintiffs could have called Prime Cable's customer service number to complain about their bill before they paid it.

We greet with general skepticism plaintiffs' contention that a complaint filed three days before payment is evidence of protest. If anything, a subsequent payment would constitute evidence of relinquishment of any prior claim under that complaint. (See 66 Am. Jur. 2d *Restitution & Implied Contracts* § 112, at 1050 (1973) ("payment nullifies the protest as effectually as it obviates the previous denial and contestation of the claim").) In any event, the additional alleged circumstances that accompanied plaintiffs' payment did not suffice to establish that the payment was involuntary. As noted above, to render a payment involuntary or compulsory, pressure must be brought to bear on the payor and that pressure must be the product of some actual or threatened power wielded over the payor from which he has no immediate relief. Here, plaintiffs alleged the threat of or actual termination or blocking out of cable service, the threat of or institution of a lawsuit against them, and damage to their credit. Ordinarily, payment made pursuant to threat of litigation or to

---

[5]As noted earlier, the defendants' motion to dismiss was brought pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1992)). Normally, affidavits are not considered in section 2—615 motions but, rather, in motions brought pursuant to section 2—619 of the Code of Civil Procedure (735 ILCS 5/2—619 (West 1992)). It does not appear that the defendants in the case at bar moved to strike the affidavit nor did they object in any other manner to its existence or use. Therefore, for purposes of this appeal and for purposes of the motion to dismiss, we will consider the affidavit as part of the complaint and will accept the statements therein as true.

prevent the bringing of a legal action is regarded as voluntary (*Fisher v. City of Ottawa* (1972), 8 Ill. App. 3d 553, 289 N.E.2d 717 (payment voluntary where serious question as to applicability of enforcement provisions, including possible lien foreclosures); *Helmick v. Carter* (1912), 171 Ill. App. 25 (allegation of threat that foreclosure proceedings would be commenced is not sufficient to constitute duress)) for the reason that an ample remedy by way of defense to the suit would exist and because no loss could occur until the lawsuit was instituted and proceeded to judgment. (See generally 66 Am. Jur. 2d *Restitution & Implied Contracts* § 109, at 1047 (1973) ("One cannot be heard to say that he had the law with him but feared to meet his adversary in court").) Thus, plaintiffs' allegations that they made payment to avoid the threat of lawsuit or actual institution of a lawsuit against them for failure to make payment would not support a finding of payment under compulsion.

A similar result is warranted with respect to plaintiffs' allegations of threat of or actual loss of cable service based upon their prior experience with Prime Cable. As stated above, in order to render a payment compulsory, there must have been some necessity and "such a pressure must be brought to bear upon the person paying as to interfere with the free enjoyment of his rights of person or property." (*Illinois Glass Co.*, 234 Ill. at 543, 85 N.E. at 201.) That pressure is established by allegations of some actual or threatened power wielded over the payor from which he has no immediate relief and from which no adequate opportunity is afforded to effectively resist the demand for payment. *West Suburban Hospital Medical Center*, 173 Ill. App. 3d 847, 527 N.E.2d 1086; see *Schlossberg v. E.L. Trendel & Associates, Inc.*, 63 Ill. App. 3d 939, 380 N.E.2d 950.

Here, we question whether cable service is a necessity such that the loss or threatened loss thereof could ever furnish the motive for payment under compulsion or economic duress. (See, *e.g., Kanter & Eisenberg v. Madison Associates*, 116 Ill. 2d 506, 508 N.E.2d 1053 (involuntary payment where nonpayment would result in disastrous effects to business); *Getto v. City of Chicago*, 86 Ill. 2d 39, 426 N.E.2d 844 (payment under compulsion to avoid real threat of loss of telephone service); *People v. Meyerowitz* (1975), 61 Ill. 2d 200, 335 N.E.2d 1 (compulsion where fine paid to avoid imprisonment); *Edward P. Allison Co. v. Village of Dolton* (1962), 24 Ill. 2d 233, 181 N.E.2d 151 (business duress based on severe penalties and threats of work stoppage); *People ex rel. Carpentier v. Treloar Trucking Co.* (1958), 13 Ill. 2d 596, 150 N.E.2d 624 (compulsion where severe statutory penalties and economic necessity); *Illinois Glass Co. v. Chicago Telephone Co.*, 234 Ill. at 541-42, 85 N.E. at 201 (business duress: "telephone has

become an instrument of such necessity in business houses that a denial of its advantages would amount to a destruction of the business"); *Ross v. City of Geneva* (1978), 71 Ill. 2d 27, 373 N.E.2d 1342 (payment involuntary where made to avoid termination of electricity to commercial users).) However, we need not reach that issue since we find that the plaintiffs' allegation of loss or threatened loss was wholly speculative.

As the defendants argue, the plaintiffs did not allege an actual loss of service or an actual threat by Prime Cable to black out their cable service if plaintiffs refused to remit the $24.95 charge to Prime Cable for the concert. Plaintiffs' allegation of a threatened loss was purely anticipatory and implied based upon a past dealing with Prime Cable, wherein Prime Cable blacked out their reception due to their failure to promptly pay their bill. That earlier factual scenario is clearly distinguishable from the factual scenario presented in the case at bar because, in the former, no dispute was alleged to have existed with respect to the monthly bill whereas, in the latter, a reasonable basis existed to dispute a charge on the monthly bill. More importantly, plaintiffs did not allege that they had exhausted all options available to them before they made payment nor did they allege *any* attempt at resolution. Plaintiffs did not allege that they contacted Prime Cable to voice their objection to the concert charge and to negotiate a decrease in that charge, based on the concert's two-hour length, nor did plaintiffs allege any knowledge by Prime Cable that a dispute existed or a refusal by Prime Cable to make an adjustment. Plaintiffs' allegations regarding loss of service were even more speculative given the fact that the plaintiffs had filed a complaint against Prime Cable and had legal counsel to protect their interests and to prevent any loss in service during the pendency of their lawsuit. Plaintiffs' filing of their lawsuit in and of itself made it very unlikely that Prime Cable would cause any service blackout thereafter based on plaintiffs' failure to pay a charge that was the subject of that lawsuit. Clearly, plaintiffs did not allege facts suggesting a lack of recourse or adequate opportunity to resist the demand for payment and thus did not allege involuntary payment. See *Elston v. City of Chicago* (1866), 40 Ill. 514 (payment of void assessment voluntary where only threat of levy and no immediate ability to take possession of payor's goods); *Arms v. City of Chicago* (1929), 251 Ill. App. 532 (no evidence of threats of City to impose penalties for failure to obtain electrical licenses such that payment was voluntary); *cf. Ross v. City of Geneva* (1976), 43 Ill. App. 3d 976, 357 N.E.2d 829, *aff'd* (1978), 71 Ill. 2d 27, 373 N.E.2d 1342 (payment under duress where termination of electrical services was threatened and where

there was evidence that it was the defendant's policy to terminate services for nonpayment of charges and where no formal protest mechanism existed that would precede the termination); see also *City of Chicago v. Northwestern Mutual Life Insurance Co.* (1905), 218 Ill. 40, 75 N.E. 803 (business compulsion or economic duress where payment made pursuant to threat of immediate water shut off where relief from the illegal demand could not be obtained prior to the threatened loss); *Bradford v. City of Chicago* (1861), 25 Ill. 349 (payment involuntary where warrant issued and collector was set to immediately levy on and sell the goods and chattels of property owner/ payor); *Young v. Hoagland* (1931), 212 Cal. 426, 298 P. 996 (payment of assessment to protect stock illegally held by corporate directors who had apparent authority to sell stock for nonpayment of assessment was involuntary).[6]

The instant case is factually similar to *Butitta v. First Mortgage Corp.* (1991), 218 Ill. App. 3d 12, 578 N.E.2d 116, wherein a motion to dismiss was granted in an action for money wrongfully had and received *in assumpsit*. In *Butitta*, the plaintiffs, who were sellers of residential real estate, were assessed certain costs and fees payable to the defendant, the buyers' mortgagees. (By law, those costs and fees could not be assessed against the buyers.) The court found that the plaintiffs' payments were voluntary because their alleged injuries had they not paid the disputed fees, namely, that their real estate sales would not have closed, were speculative since the plaintiffs did not allege that the closings were conditioned on their payment of the fees to the defendant; because the plaintiffs' refusal to pay the fees would not have given the defendant the right to bring a cause of action against them since there was no privity between the plaintiffs and the defendant; and because the plaintiffs would not have sustained injury even if they failed to pay the charges and the closings collapsed because the plaintiffs would have had claims for specific performance or breach of contract against their buyers. The court also rejected the plaintiffs' cause of action for economic duress because of a lack of privity of contract between the plaintiffs and the

---

[6]Plaintiffs' allegation that their payment was made to avoid damage to their credit also is speculative in view of the absence of allegations of prior threats or actions by the defendants to cause such an injury. (See *Butitta v. First Mortgage Corp.* (1991), 218 Ill. App. 3d 12, 578 N.E.2d 116.) While an allegation of desperation to save one's financial reputation can be sufficient to sustain a claim for economic duress (see *Herget National Bank v. Theede* (1989), 181 Ill. App. 3d 1053, 537 N.E.2d 1109), the threat must be actual. Thus, the plaintiffs' reference in their complaint to damage to their credit is insufficient to support their claim of compulsion.

defendant and because plaintiffs' allegations that they were not afforded an opportunity to resist the charges were unsupported and speculative in view of the absence of any allegations that the plaintiffs questioned the charges before they paid them.

As in *Butitta*, the plaintiffs' allegations of threatened loss were purely speculative, unsupported by any facts. There were no threats of any kind attributed to the defendants such that any threat of loss or termination of services was based upon conjecture. The plaintiffs did not notify Prime Cable of their objection to the concert charge nor did they give Prime Cable an opportunity to resolve or refuse to resolve the dispute. As a result, plaintiffs could not allege that they had availed themselves of all options to resist payment nor could they allege that they had no recourse but to pay. We also note that the type of possible loss claimed in *Butitta*, the loss of a sale, could be characterized as an economic loss, whereas the possible loss here, loss of home cable service, is, as discussed earlier, a questionable predicate for duress even where the threat of such loss would have been sufficiently pled. Thus, there can be no doubt that plaintiffs' payment was made voluntarily and not under duress such that, in accordance with the voluntary payment doctrine, the trial court properly dismissed all counts of plaintiffs' complaint seeking recovery of their payment.[7]

With respect to plaintiffs' statutory fraud count (count III), the plaintiffs alleged "deceitful, misleading, and an unfair method of competition and unfair act and practice in the conduct of the Defendants' trade or commerce in violation of the Consumer Fraud and Deceptive [Business] Practices Act" (815 ILCS 505/2 (West 1994)

---

[7]The parties to the instant appeal limit their discussion of the voluntary payment doctrine to plaintiffs' breach of contract and breach of implied contract counts. However, the trial court applied that doctrine to plaintiffs' breach of contract and fraud counts. The voluntary payment doctrine seemingly applies to any cause of action which seeks to recover a payment made under a claim of right whether that claim is premised on a contractual relationship (see, *e.g.*, *Illinois Glass Co. v. Chicago Telephone Co.* (1908), 234 Ill. 535, 85 N.E. 200; *Schlossberg v. E.L. Trendel & Associates* (1978), 63 Ill. App. 3d 939, 380 N.E.2d 950); a fraudulent misrepresentation (see, *e.g.*, *Jursich v. Arlington Heights Federal Savings & Loan Association* (1982), 110 Ill. App. 3d 847, 441 N.E.2d 864); a statutory obligation (see, *e.g.*, *Ross v. City of Geneva* (1976), 43 Ill. App. 3d 976, 357 N.E.2d 829, *aff'd* (1978), 71 Ill. 2d 27, 373 N.E.2d 1342 (ordinance surcharge); *Fisher v. City of Ottawa* (1972), 8 Ill. App. 3d 553, 289 N.E.2d 717 (ordinance penalty charge)); and an illegal stock assessment (see, *e.g.*, *Young v. Hoagland* (1931), 212 Cal. 426, 298 P. 996), among others.

(formerly Ill. Rev. Stat. 1991, ch. 121½, par. 262)) and "conduct which creates a likelihood of confusion or misunderstanding between the parties *** in violation of the Illinois Uniform Deceptive Trade Practices Act" (815 ILCS 510/2 (West 1994) (formerly Ill. Rev. Stat. 1991, ch. 121½, par. 312)).

■ The Illinois Consumer Fraud and Deceptive Business Practices Act (the Consumer Fraud Act or Act) creates a cause of action different from the traditional common law tort of fraud and affords greater consumer protection than does the common law action since the Act prohibits any "deception" or "false promise." (*Buechin v. Ogden Chrysler-Plymouth, Inc.* (1987), 159 Ill. App. 3d 237, 511 N.E.2d 1330; *Perlman v. Time, Inc.* (1978), 64 Ill. App. 3d 190, 380 N.E.2d 1040.) Section 2 of the Act provides in pertinent part:

> "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation *** or the use or employment of any practice described in Section 2 of the 'Uniform Deceptive Trade Practices Act' *** in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2 (West 1994).

■ As noted in *Buechin v. Ogden Chrysler-Plymouth, Inc.*, "[t]he majority of the traditional common law elements [of the tort of fraud] have been virtually eliminated by the [Act]." (*Beuchin*, 159 Ill. App. 3d at 249, 511 N.E.2d at 1337; see *Duhl v. Nash Realty Inc.* (1981), 102 Ill. App. 3d 483, 429 N.E.2d 1267.) For example, in an action under the Consumer Fraud Act, the intention of the seller or the mental state of the person making the misrepresentation is not material to the existence of a cause of action under the Act since an action for innocent misrepresentation also is permissible under the Act. (*Duhl v. Nash Realty Inc.*, 102 Ill. App. 3d 483, 429 N.E.2d 1267; *Beard v. Gress* (1980), 90 Ill. App. 3d 622, 413 N.E.2d 448.) Moreover, while the misrepresentation must be of a material fact (*Mack v. Plaza Dewitt Limited Partnership* (1985), 137 Ill. App. 3d 343, 484 N.E.2d 900), that misrepresentation is actionable under the Consumer Fraud Act if it relates to a future fact. (*Duran v. Leslie Oldsmobile, Inc.* (1992), 229 Ill. App. 3d 1032, 594 N.E.2d 1355; see *Duhl v. Nash Realty Inc.*, 102 Ill. App. 3d at 495, 429 N.E.2d at 1277 ("liability is not limited to existing material facts").) Significant, too, is the fact that the Act does not require actual reliance. (*Siegel v. Levy Organization Development Co.* (1992), 153 Ill. 2d 534, 607 N.E.2d 194.) Thus, to establish a violation of the Act, a plaintiff need only prove: a deceptive act or practice; an intent by the defendant that plaintiff rely on

the deception; and that the deception occurred in the course of conduct involving trade or commerce. (*Siegel v. Levy Organization Development Co.*, 153 Ill. 2d 534, 607 N.E.2d 194; see *Kostur v. Indiana Insurance Co.* (1989), 192 Ill. App. 3d 859, 549 N.E.2d 685; *Greenberg v. United Airlines* (1990), 206 Ill. App. 3d 40, 563 N.E.2d 1031.) The complaint must be pleaded with the same specificity as an action for common law fraud. *People ex rel. Hartigan v. E&E Hauling, Inc.* (1991), 218 Ill. App. 3d 28, 577 N.E.2d 1262; *Spengler v. V&R Marathon, Inc.* (1987), 162 Ill. App. 3d 715, 516 N.E.2d 787.

Deceptive practices incorporated into the Consumer Fraud Act include advertising goods or services with intent not to sell them as advertised and engaging in conduct that creates a likelihood of confusion or of misunderstanding. (815 ILCS 505/2 (West 1994); 815 ILCS 510/2(9), (12) (West 1994).) An advertisement has been held to be deceptive on its face if it creates the likelihood of deception or has the capacity to deceive. (*Williams v. Bruno Appliance & Furniture Mart, Inc.* (1978), 62 Ill. App. 3d 219, 379 N.E.2d 52.) Where the deception is based on a misrepresentation, that misrepresentation must be material and must relate to a matter upon which the plaintiff could be expected to rely in determining whether to engage in the conduct in question. *People ex rel. Hartigan v. Knecht Services, Inc.* (1991), 216 Ill. App. 3d 843, 575 N.E.2d 1378.

■ Excluding for the moment our consideration of the damages element to plaintiffs' consumer fraud count, a review of the complaint shows that the plaintiffs have pled a cause of action under the Consumer Fraud Act as to defendants Prime Cable and Network. (As to Pro-Tours, plaintiffs' failure to allege any misstatement or deception by that defendant requires dismissal of the statutory fraud counts against that defendant.) The plaintiffs' consumer fraud count realleged and incorporated therein the allegations set forth in the common law fraud count. While those allegations were insufficient to support that cause of action, because the misrepresentation concerned future conduct, the Consumer Fraud Act is not limited to false promises concerning existing material fact. (See *Duran v. Leslie Oldsmobile, Inc.*, 229 Ill. App. 3d 1032, 594 N.E.2d 1355; *Duhl v. Nash Realty Inc.*, 102 Ill. App. 3d 483, 429 N.E.2d 1267.) The complaint alleged deception in that the promotional materials of Prime Cable and Network created a false impression and misrepresented that the concert length was three hours to induce the plaintiffs to purchase the viewing rights to the concert. (See *Spengler v. V&R Marathon, Inc.*, 162 Ill. App. 3d 715, 516 N.E.2d 787 (complaint under Consumer Fraud Act must set forth what representations were made, when they were made, and to whom they were made).) The plaintiffs al-

leged that the deception occurred in the course of trade or commerce in that Prime Cable and Network advertised and offered for sale the viewing rights to the Judds' concert. Plaintiffs also alleged that Prime Cable and Network knew that the advertisement was false, thus implying an intent to deceive. (See *Duhl v. Nash Realty Inc.*, 102 Ill. App. 3d 483, 429 N.E.2d 1267 (one who knowingly makes a false statement is guilty of fraud regardless of motive; plaintiff not required to prove express fraudulent intent); *Perlman v. Time, Inc.*, 64 Ill. App. 3d 190, 380 N.E.2d 1040.) These allegations would satisfy the liberal pleading requirements for an action under the Consumer Fraud Act.

Nevertheless, plaintiffs' complaint alleging violation of the Consumer Fraud Act must be dismissed due to plaintiffs' inability to recover damages. Damages recoverable under the Consumer Fraud Act in a private cause of action include "actual damages or any other relief which the court deems proper." (Ill. Rev. Stat. 1991, ch. 121½, par. 270a(a) (now 815 ILCS 505/10a(a) (West 1994)).) By statutory amendment, effective January 1, 1991, the court may award injunctive relief where appropriate. (Pub. Act 86—1305, eff. January 1, 1991 (amending Ill. Rev. Stat. 1989, ch. 121½, par. 270a(c) (now 815 ILCS 505/10a(c) (West 1994))).) Punitive damages, while disfavored, also are recoverable (see *Malooley v. Alice* (1993), 251 Ill. App. 3d 51, 621 N.E.2d 265; *Elk v. Knecht* (1991), 223 Ill. App. 3d 234, 585 N.E.2d 156) where the alleged misconduct is outrageous either because the acts are done with malice or an evil motive or because they are performed with a reckless indifference toward the rights of others. (See *Martin v. Heinold Commodities, Inc.* (1994), 163 Ill. 2d 33, 643 N.E.2d 734; *Malooley v. Alice*, 251 Ill. App. 3d 51, 621 N.E.2d 265 (punitive damages recoverable where gross deception or willful and wanton misconduct).) The initial determination of whether the facts and circumstances justify imposition of punitive damages is a question of law. *Malooley v. Alice*, 251 Ill. App. 3d 51, 621 N.E.2d 265.

Plaintiffs' prayer for relief in the instant case appeared at the end of the complaint and applied to all counts therein. In that section of their complaint the plaintiffs sought an accounting, recovery of the monies they had paid to view the concert, injunctive relief, attorney fees, and punitive damages. As held above, the plaintiffs are barred from recovering their payment of the concert charge due to the operation of the voluntary payment doctrine. Plaintiffs also could not plead entitlement to punitive damages, assuming the voluntary payment doctrine would not bar recovery of punitive damages, because they failed to plead facts alleging gross or outrageous misconduct or acts of reckless indifference. Plaintiffs' consumer fraud

count primarily realleged by reference allegations in their common law fraud count which stated that the defendants "knowingly" and "falsely, deceitfully and fraudulently *** misrepresented" the length of the concert. Plaintiffs' allegations do not rise to the level of actual malice, evil motive or reckless indifference so as to justify an award of punitive damages. *Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 643 N.E.2d 734; see *Parsons v. Winter* (1986), 142 Ill. App. 3d 354, 491 N.E.2d 1236 (failure to plead circumstances for award of punitive damages in common law fraud action).

■ Finally, plaintiffs could not plead facts showing entitlement to injunctive relief since a private cause of action under the Consumer Fraud Act cannot arise absent a showing of both a violation of the Act and resultant damages. The Consumer Fraud Act provides a private cause of action only where a plaintiff can show that he suffered damage as a result of unlawful conduct proscribed by the statute. (*Tarin v. Pellonari* (1993), 253 Ill. App. 3d 542, 625 N.E.2d 739; see *Sutherland v. Illinois Bell* (1993), 254 Ill. App. 3d 983, 627 N.E.2d 145; *Duran v. Leslie Oldsmobile, Inc.*, 229 Ill. App. 3d 1023, 594 N.E.2d 1355 (absent allegation of damages, only Attorney General may prosecute violation of the Consumer Fraud Act).) Moreover, injunctive relief would have been inappropriate since plaintiffs could not plead facts that they likely would be damaged in the future. The damages alleged by the plaintiffs relate to an overcharge for the cost of the live concert due to its less-than-promised length. It is not reasonably likely that the plaintiffs will be misled as to the concert's duration or that they will be damaged in the future, even assuming the concert's rebroadcast, since that concert was originally broadcast live and could not be altered in the future. (See *Glazewski v. Coronet Insurance Co.* (1985), 108 Ill. 2d 243, 483 N.E.2d 1263 (no injunctive relief where plaintiffs know of problems and armed with that knowledge could avoid damage in future); *Popp v. Cash Station, Inc.* (1992), 244 Ill. App. 3d 87, 613 N.E.2d 1150.) Thus, as plaintiffs are entitled to no relief under the Consumer Fraud Act, that count of their complaint was properly dismissed.

■ For similar reasons, plaintiffs cannot seek redress under the Uniform Deceptive Trade Practices Act. Initially, we note that the Act allows for injunctive relief, not an award of damages. (*Empire Home Services, Inc. v. Carpet America, Inc.* (1995), 274 Ill. App. 3d 666, 653 N.E.2d 852.) It provides remedies in addition to and not otherwise available against the same conduct under the common law or other statutes. (Ill. Rev. Stat. 1991, ch. 121$^1$/$_2$, par. 313; see *Greenberg v. United Airlines*, 206 Ill. App. 3d 40, 563 N.E.2d 1031; *Glazewski v. Coronet Insurance Co.*, 108 Ill. 2d 243, 483 N.E.2d 1263.) While

the Uniform Deceptive Trade Practices Act primarily focuses on acts between competitors, a cause of action under that act can be stated and injunctive relief is obtainable by an individual consumer where that consumer can allege facts that he likely would be damaged by the defendant's conduct in the future (*Tarin v. Pellonari*, 253 Ill. App. 3d 542, 625 N.E.2d 739; *Greenberg v. United Airlines*, 206 Ill. App. 3d 40, 563 N.E.2d 1031; *Glazewski v. Coronet Insurance Co.*, 108 Ill. 2d 243, 483 N.E.2d 1263). (*Popp v. Cash Station, Inc.*, 244 Ill. App. 3d 87, 613 N.E.2d 1150.) Since, as discussed above, the plaintiffs could not show a likelihood of future damage from the acts of the defendants, their cause of action under the Uniform Deceptive Trade Practices Act must fail. (See *Popp v. Cash Station, Inc.*, 244 Ill. App. 3d 87, 613 N.E.2d 1150; *Glazewski v. Coronet Insurance Co.*, 108 Ill. 2d 243, 483 N.E.2d 1263; *Brooks v. Midas-International Corp.* (1977), 47 Ill. App. 3d 266, 275, 361 N.E.2d 815 (in a consumer action under the Deceptive Trade Practices Act, injunctive relief rare because "[o]rdinarily, the harm has already occurred").) Thus, the trial court properly dismissed that cause of action as well.

■ As their final issue on appeal, the plaintiffs argue that they are entitled to an accounting, not as an independent cause of action but as a remedy to their fraud counts. Based on our holding that the plaintiffs have not pled entitlement to any recovery, there can be no application for the remedy of an accounting; and, as such, their claim for an accounting is moot.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

COUSINS, P.J., and McNULTY, J., concur.