WERMERS FLOORCOVERING, INC., Plaintiff-Appellee, v. SANTANNA NATURAL GAS CORPORATION, d/b/a Santanna Energy Services, Defendant-Appellant.

Second District No. 2—02—0581

Opinion filed July 30, 2003.

Paul F. Markoff and Nancy A. Buzzard, both of Crowley, Barrett & Karaba, Ltd., of Chicago, and Timothy B. Zollinger, of Ward, Murray, Pace & Johnson, P.C., of Sterling, for appellant.

Al Henry Williams, of Dixon, for appellee.

JUSTICE CALLUM delivered the opinion of the court:

Defendant, Santanna Natural Gas Corporation, d/b/a Santanna Energy Services, appeals from a judgment awarding $1,421.22 to plaintiff, Wermers Floorcovering, Inc., a company that sells and installs carpet and wallpaper, for defendant's breach of a contract to supply natural gas at a fixed price for a definite term. Defendant argues that the trial court erroneously concluded that the affirmative defense of voluntary payment did not preclude plaintiff's claim. Because we conclude that plaintiff's voluntary payments to defendant were not made under duress, we reverse.

Gerald Wermers, plaintiff's owner, received a notice from Nicor Gas Company (Nicor) about its new customer select program, which allowed its natural gas customers to contract with other gas suppliers for service. Wermers recalled that Nicor's list of suppliers contained 10 or 12 companies. Wermers investigated the rates offered by the different suppliers and entered into a three-year contract with defendant. According to that agreement, plaintiff would be charged a rate of $0.265 per therm for its natural gas usage. A few months later, defendant sent a proposal to plaintiff for a flat rate service that would include all Nicor distribution charges. Plaintiff agreed, and an addendum was executed whereby the rate was increased to $0.4365 per therm.

In June 2000, Wermers noticed that plaintiff's gas bill was significantly higher. He discovered that defendant was charging plaintiff a per-therm rate that was higher than that in the contract. Wermers called defendant and was informed that it had sent plaintiff

a letter explaining that it had to increase its prices due to unprecedented market conditions. He had not received the letter, so defendant faxed him a copy. In the letter, defendant stated:

> "Due to the recent unanticipated increase in the price of natural gas, Santanna Energy Services (SES) has determined that a condition of Force Majeure exists, and it is no longer able to supply gas at the current contract rate. \*\*\*
>
> \*\*\*
>
> If you do not wish to continue in the Nicor Gas Select Program, you may of course return to Nicor Gas sales service. \*\*\* Should you, for any reason, wish to return to Nicor Gas, please contact our Customer Service staff \*\*\* and they will make sure that you have the proper procedure."

Wermers had several conversations with defendant, during which he insisted that defendant honor the contractual rate. He was informed by defendant to "either pay [the increased rate] or the gas would be shut off." Although plaintiff continued to pay defendant's monthly bill in full for the next eight months, he kept a chart of the charges above the contractual rate. Wermers also consulted an attorney, who informed him to maintain his records, and, when the damages were large enough, a lawsuit would be economically justified.

On May 9, 2001, plaintiff filed a two-count complaint, alleging that defendant breached the contract. In its answer, defendant asserted four affirmative defenses, including the voluntary payment doctrine. After a bench trial, the trial court ordered judgment for plaintiff. The court determined that defendant's affirmative defense of voluntary payment did not defeat plaintiff's claims because plaintiff's payments were made under duress. Defendant appeals.

■ Defendant does not contest the trial court's conclusion that it breached the contract. Rather, it contends that the trial court erred by finding that plaintiff's payments were made while under duress and, thus, not subject to the voluntary payment affirmative defense. We review the trial court's factual findings under a manifest weight of the evidence standard. *In re D.M.*, 336 Ill. App. 3d 766, 773 (2002). A decision is against the manifest weight of the evidence if the facts clearly demonstrate that the court should have reached the opposite conclusion. *D.M.*, 336 Ill. App. 3d at 773.

■ Under the voluntary payment doctrine, "money voluntarily paid under a claim of right to the payment, and with knowledge of the facts by the person making the payment, cannot be recovered by the payor solely because the claim was illegal." *Smith v. Prime Cable of Chicago*, 276 Ill. App. 3d 843, 847 (1995). A payment is involuntary if (1) the payor lacked knowledge of the facts upon which to protest the

payment at the time of payment, or (2) the payor paid under duress. *Getto v. City of Chicago*, 86 Ill. 2d 39, 48-49 (1981). In other words, to negate the applicability of the doctrine, plaintiff must "not only show that the claim asserted was unlawful but also that payment was not voluntary, that there was some necessity which amounted to compulsion. [Citations.]" *Smith*, 276 Ill. App. 3d at 848.

■ Such compulsion, or duress, occurs " '[w]here a person, to prevent injury to himself, his business or property, is compelled to make payment of money which the party demanding has no right to receive and no adequate opportunity is afforded the payor to effectively resist such demand.' " *Smith*, 276 Ill. App. 3d at 849, quoting *Schlossberg v. E.L. Trendel & Associates, Inc.*, 63 Ill. App. 3d 939, 942 (1978). Protest may also serve as evidence of compulsion and an unwillingness to pay; however, it does not conclusively establish compulsion where compulsion is disproved by other circumstances. *Smith*, 276 Ill. App. 3d at 849. In determining whether a plaintiff's payment was made under compulsion, this court must consider all the facts and circumstances surrounding the transaction. *Smith*, 276 Ill. App. 3d at 850.

■ The recoupment of payments made under duress is limited to items deemed to be necessities. *Geary v. Dominick's Finer Foods, Inc.*, 129 Ill. 2d 389, 398 (1989). Specifically, to determine whether duress motivated the payment of a demanded sum, attention must be given to the nature of the asset involved and the consequences of nonpayment. *Geary*, 129 Ill. 2d at 398. Furthermore, "the existence of a reasonable alternative source precludes any arguments about whether a particular product or service constitutes a necessity." *Dreyfus v. Ameritech Mobile Communications, Inc.*, 298 Ill. App. 3d 933, 940 (1998).

■ The present case involves natural gas service. Indeed, other utilities have been deemed necessities, and the payments made under protest to maintain those services have been held recoupable. See *Getto*, 86 Ill. 2d at 51 (payment made under duress when paid to avoid loss of telephone service); *Ross v. City of Geneva*, 71 Ill. 2d 27, 33-34 (1978) (payment made under duress where pubic utility threatened to terminate electricity). But see *Dreyfus*, 298 Ill. App. 3d at 940 (cellular telephone service not a necessity); *Smith*, 276 Ill. App. 3d at 855 (same for cable service). However, defendant insists that the manifest weight of the evidence established that plaintiff had reasonable alternative sources available for natural gas service and, thus, its voluntary payments were not made under duress. We agree.

At the trial, the evidence showed that Wermers had reviewed Nicor's customer select list, telephoned several companies, and accepted

the service offer extended by defendant. In addition, Wermers admitted receiving the faxed letter from defendant that clearly stated that, if the customer did not want to pay the higher rate, service could revert to Nicor. This unrefuted evidence establishes that alternative sources of natural gas were available to plaintiff.

Nonetheless, plaintiff presented no evidence suggesting that it had to pay defendant because switching to another natural gas supplier was unreasonable. Wermers testified that defendant informed him that it would terminate service if plaintiff did not pay the disputed charges, but he did not present testimony concerning what consequences the business might suffer if the service were terminated or if it had to change suppliers. Instead, Wermers testified that, after the dispute arose, he did not investigate switching suppliers, even though the parties' contract was terminable without penalty on 30 days' notice. According to *Dreyfus*, 298 Ill. App. 3d at 940, when a party has alternative sources available and could have opted out of making a disputed payment, then the asset involved is not a "necessity," the duress exception does not apply, and the voluntary payments cannot be recouped. We conclude that the trial court's ruling that plaintiff paid defendant under duress is against the manifest weight of the evidence and that plaintiff's claim was defeated by the voluntary payment affirmative defense.

For these reasons, the judgment of the circuit court of Lee County is reversed.

Reversed.

BOWMAN and O'MALLEY, JJ., concur.